Ralph **WHITE** et al., Plaintiffs and Plaintiff-Intervenors, on behalf of themselves and all others similarly situated

v.

Frank S. **BEAL**, Individually and as Secretary of the Department of Public Welfare, et al., Defendants.

Civ. A. No. 75–11.

United States District Court, E. D. Pennsylvania.

April 21, 1976.

As Amended April 23, 1976.

R. Michael Kemler, Community Legal Services, Stephen F. Gold, Philadelphia, Pa., for plaintiffs.

Howard M. Holmes, Asst. Atty. Gen., Eastern Regional Office, Com. of Pa., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

■ This matter is before the court on motions for summary judgment and preliminary injunction.[1]

Plaintiffs claim that Pa.Stat.Ann. tit. 62, § 443.4 DPW—Pa. Manual §§ 9740 and 9743 are in conflict with the Social Security Act, 42 U.S.C. § 1396 (1970) et seq.; the regulations promulgated thereunder, 45 CFR § 249.10 et seq.; and the Due Process and Equal Protection clauses of the Fourteenth Amendment.

Suit was originally instituted on January 6, 1975 by Edie Mae Mason, Valerie Smith and the Philadelphia Welfare Rights Organization (WRO) on behalf of themselves and all others similarly situated. Named as defendants were Helene Wohlgemuth, individually and as Secretary of the Pennsylva-

---

1. Because material facts are not in dispute and relief is more in the nature of declaratory relief and permanent injunction rather than a preliminary injunction, no findings of fact are necessary under Rule 52, Fed.R.Civ.P. *Chas. Pfizer & Co., Inc. v. Zenith Laboratories, Inc.*, 339 F.2d 429, 430 (3d Cir. 1964). Rule 52 specifically does not require findings of fact and conclusions of law in a decision on summary judgment. However, to the extent that an appellate court may decide that formal findings of fact and conclusions of law are required, the facts and conclusions set forth in this memorandum shall be deemed findings of fact and conclusions of law.

nia Department of Public Welfare; Glenn Johnson, individually and as Director of Bureau of Medical Assistance, Pennsylvania Department of Public Welfare; Don Jose Stovall, individually and as Executive Director of Philadelphia, Pennsylvania, County Board of Assistance; the Pennsylvania Department of Public Welfare; and the Philadelphia County Board of Assistance. Mason and Smith have withdrawn as plaintiffs and Ralph White, William B. Johnson, Bernice Fredricksdorf, Michael Darragh and Charles Eder have intervened as plaintiffs. Plaintiffs have substituted Frank S. Beal for Wohlgemuth, as Beal is presently the Secretary of the Pennsylvania Department of Public Welfare.

Ralph White is an adult citizen of Pennsylvania. He is poor and receives $166 a month in benefits under Supplementary Security Income Program and pays $88 per month in rent. He had been employed by the Bellevue Stratford Hotel as a night auditor until July, 1972. He cannot perform that job because of refractive error and inadequate eyeglasses. He has been examined at the Scheie Eye Institute and the Wills Eye Hospital as recently as January 17, 1975. These examinations revealed severe refractive error in the form of nearsightedness requiring trifocals. He submitted an application for eyeglasses under the Medical Assistance Program to the Pennsylvania Department of Public Welfare. On May 15, 1975, he was informed through his caseworker that his request was disapproved because he did not have an eye disease or pathologic condition as required by DPW—Pa. Manual § 9743. (Stipulation as to Facts).

Bernice Fredricksdorf is a citizen of Pennsylvania. She is poor, receiving $88 per month under the Public Assistance Program. She suffers from diabetes and high blood pressure and was examined on December 10, 1974 at the Pennsylvania College of Optometry. This examination disclosed hyperopic astigmatism and new eyeglass lenses were prescribed as necessary to alleviate this condition. Fredricksdorf applied to the Pennsylvania Depart-

ment of Public Welfare for eyeglasses under the Medical Assistance Program. In February, 1975, her request was denied on the ground that she had refractive error and not eye disease or pathology. She asked for reconsideration, and in May, 1975, was again advised that she was ineligible. (Stipulation).

Charles Eder is a citizen of Pennsylvania. He is poor, receiving $76.50 every two weeks under the Public Assistance Program. His rent is $100 per month. Because of severe headaches and bloodshot eyes, he went to Dr. B. M. Hamberg, Doctor of Optometry for an eye examination on March 4, 1975. Dr. Hamberg prescribed eyeglasses to improve the refractive error from which Eder suffered. On Eder's behalf, Dr. Hamberg submitted an application for eyeglasses under the Medical Assistance Program to the Pennsylvania Department of Public Welfare. On May 29, 1975, plaintiff received notification that his request for glasses had been denied under § 9743 because he had no eye pathology. Eder then arranged to purchase eyeglasses from Tru-Site Optical Co., Philadelphia, Pennsylvania. He has paid $20 and owes $15 to Tru-Site. Through his attorney, Eder has delayed the payment of the balance pending a determination of his entitlement to eyeglasses from the Medical Assistance Program. (Complaint of Intervening Plaintiff, Eder).

Michael Darragh is a citizen of Pennsylvania. He is poor, receiving $516 per month under the Public Assistance Program for support of himself, his wife and six children. His expenses include $60 a month for rent and $57 a month to repay a consumer loan. Darragh is 35 years old and has worn eyeglasses for about 10 years. His present eyeglasses are two years old. In April, 1975, while cleaning his glasses, the frames broke. On April 28, 1975, Darragh was examined at the Philadelphia College of Optometry where he was advised that while his lenses were adequate, his frames had to be replaced. He spoke to his Pennsylvania Department of Public Welfare caseworker, Miss Bergman, who ad-

vised him that the Medical Assistance Program would not provide this service because he had no eye pathology (Complaint of Intervening Plaintiff—Darragh).

William B. Johnson is a citizen of Pennsylvania. He is poor, receiving $21 every two weeks. Johnson is twenty-one years old and has worn eyeglasses for 10 years. He suffers from myopia and astigmatism neither of which is an eye disease or pathology, but both of which can be corrected by eyeglasses. He accidentally broke his glasses and requested eyeglasses from his caseworker at the Philadelphia County Board of Assistance. He was informed by his caseworker that the Medical Assistance Program would not pay for eyeglasses because he had no eye disease or pathology. (Amended Complaint).

### A. Eleventh Amendment

■ The Eleventh Amendment of the United States Constitution has been held to forbid a federal court from rendering a judgment against an unconsenting state in favor of a citizen of that state.[2] *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662, 672 (1974); *Employees of Dept. of Public Health and Welfare of Missouri v. Dept. of Public Health and Public Welfare of Missouri*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251, 253 (1973). If a state agency is the named defendant, it is necessary to determine the relationship of the agency to the state to ascertain whether the state is the real or substantial party in interest. *Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247, 250 (3d Cir. 1969).

■ Some courts have determined that the relief sought is the controlling factor and that if a state agency is sued and equitable relief rather than money damages is sought, the Eleventh Amendment is inap-

plicable. *See, e.g., 21 Properties, Inc. v. Romney*, 360 F.Supp. 1322, 1326 (N.D.Tex. 1973). The better reasoning, however, is to determine the status of the agency without regard to the type of relief sought. *See Byram River v. Village of Port Chester, New York*, 394 F.Supp. 618 (S.D.N.Y.1975). This is logical since the Supreme Court has held that the Eleventh Amendment is applicable when a state is sued for equitable relief, *Duhne v. New Jersey*, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920), and the language of the Eleventh Amendment states that it applies to both suits in law and equity.

■ In analyzing the functions of the Department of Public Welfare in light of standards used in determining the status of a state agency, *see, e.g., King v. Caesar Rodney School Dist.*, 396 F.Supp. 423 (D.Del.1975); it is clear that the Department is an alter ego of the state and, hence, is immune from suit before this court by virtue of the Eleventh Amendment. *Downs v. Dept. of Public Welfare*, 368 F.Supp. 454 (E.D.Pa.1973) (Green, J.). The Eleventh Amendment does not immunize state officials from suit in federal court insofar as prospective relief is sought which relief has only an ancillary impact on the public treasury. *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662, 675 (1974); *Byram River v. Village of Port Chester, New York, supra* at 628. To the extent that plaintiffs' demand for relief sought is prospective having an ancillary impact on the state treasury and because full relief can be obtained from the named state officials in the form of an equitable remedy, the named state officials are not immune from suit. *See Fialkowski v. Shapp*, 405 F.Supp. 946 (E.D.Pa.1975) (Huyett, J.).

---

**2.** The language of the Eleventh Amendment by its terms does not so provide. But the Supreme Court in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889), held that the purposes of the Eleventh Amendment, *viz.*, protection of a state treasury, would not be served if a state could be sued by its citizens in federal court.

The Eleventh Amendment provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

## B. *Jurisdiction*

Defendants contend that this court lacks subject matter jurisdiction. Plaintiffs allege jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

### 28 U.S.C. § 1343

■ Plaintiffs' statutory claim that Pa. Stat.Ann. tit. 62 § 443.4 and DPW–Pa. Manual §§ 9740 and 9743 are in conflict with the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and the regulations promulgated thereunder, 45 CFR § 249.10 *et seq.*, and thus violative of the Supremacy Clause of Article VI of the United States Constitution presents serious jurisdictional questions if that claim is brought under 28 U.S.C. § 1343. The pertinent portions of that statute provide the following:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity *secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens* or of all persons within the jurisdiction of the United States. (emphasis added).
>
> (4) To recover damages or to secure equitable or other relief under *any Act of Congress providing for the protection of civil rights*, including the right to vote. (emphasis added).

It has been held that the Social Security Act, which is the basis of plaintiffs' statutory claim fails to meet the "equal rights" language of § 1343(3), *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974); *McCall v. Shapiro*, 416 F.2d 246 (2d Cir. 1966); and *Acosta v. Swank*, 325

F.Supp. 1157 (N.D.Ill.1971), or the "Civil Rights" language of § 1343(4), *Duffany v. Van Lare*, 373 F.Supp. 1060 (N.D.N.Y.1973). There are, however, decisions to the contrary. *See, e.g., Blue v. Craig*, 505 F.2d 830 (4th Cir. 1973); and *Rosen v. Hursh*, 464 F.2d 731 (8th Cir. 1972). The Supreme Court has specifically declined to decide this issue. *Hagans v. Lavine*, 415 U.S. 528, 534 n. 5, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577, 586 (1974), and *Rosado v. Wyman*, 397 U.S. 397, 405 n. 7, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442, 451 (1970). Because another independent ground for jurisdiction exists, it is inappropriate to determine if there is jurisdiction under § 1343 to decide the statutory claim.[3]

■ Jurisdiction exists under the theory of pendent jurisdiction propounded by the Supreme Court in *Hagans v. Lavine, supra*. *Hagans* holds that where a plaintiff brings a civil rights action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 in which the complaint asserts both a constitutional claim and a statutory conflict, the district court has jurisdiction to entertain the constitutional claim under 28 U.S.C. § 1343(3) if that claim satisfies the substantiality doctrine. The district court could then hear the conflict between state and federal law as a matter of pendent jurisdiction. Given the fact that a district court has jurisdiction over both a constitutional claim and a statutory claim, the court must first decide the statutory claim and not reach the constitutional claim if its decision on the statutory claim is dispositive. *Doe v. Westby*, 420 U.S. 968, 95 S.Ct. 1385, 95 S.Ct. 1385, 43 L.Ed.2d 648 (1975).[4]

■ In the instant case the complaint alleges both constitutional and statutory claims. Thus, if a constitutional claim presents a substantial question, this court is seised of jurisdiction and will examine the statutory claim under the authority of *Ha-*

---

**3.** Neither is it necessary to consider other theories propounded by plaintiffs, *viz.*, that a conflict between a federal statute and a state statute or regulation is itself a constitutional matter within the meaning of § 1343(3); and that § 1343 should be read coextensively with 42 U.S.C. § 1983, thereby investing a federal district court with jurisdiction to hear any suit

authorized by § 1983. *See Hagans v. Lavine*, 415 U.S. 528, 533, 535 n. 5, 94 S.Ct. 1372, 1377, 1378, 39 L.Ed.2d 577, 585, 586 (1974).

**4.** The constitutional issue can only be adjudicated by a three-judge court, 28 U.S.C. § 2281, while the statutory claim is within the competency of a single federal judge.

*gans.* This policy has been adopted in this circuit, *Doe v. Beal,* 523 F.2d 611 (3rd Cir. 1975), and district, *Williams v. Wohlgemuth,* 400 F.Supp. 1309 (E.D.Pa., 1975) (Broderick, J.).

▮▮▮ The immediate issue presented is whether either the due process and/or equal protection claims are substantial. The Supreme Court has stated that a claim is constitutionally insubstantial "only if prior decisions inescapably render the claims frivolous." *Hagans v. Lavine, supra,* 415 U.S. at 538, 94 S.Ct. at 1379, 39 L.Ed.2d at 588, quoting *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36, 42 (1973). It must be noted that previous decisions which may render a claim doubtful or of questionable merit, do not render those claims insubstantial. *Id.* Thus, a claim is insubstantial only if previous decisions "foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482, 483 (1910).

The due process claim asserts that the Pennsylvania Department of Public Welfare's regulations which restrict eyeglasses under the Medical Assistance Program have established a conclusive presumption "that eyeglasses are medically required to aid or improve vision only for persons having eye disease or pathology." (Amended Complaint ¶ 45), and that this presumption is not true in fact and thus violates the Fourteenth Amendment. Defendants argue that no presumption has been created by the Commonwealth, and that plaintiffs have fabricated this argument as a method of attacking these regulations. There are cases in which a statue specifically creates a "rebuttable" presumption. *See, e.g., Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249, 44 U.S.L.W. 4295 (1976); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). There are other cases, however, in which a statute does not specifically create a presumption. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Crawford v. Cushman,* 531 F.2d 1114 (2d Cir. 1976), 44 U.S.L.W. 2415. In the latter situation a plaintiff asserts that such a presumption exists by virtue of the statute and defendants argue that the statutory purpose was valid and not arbitrary. In *La Fleur* the Court struck down mandatory maternity leave regulations of school boards. These required a pregnant school teacher to take unpaid maternity leave five months before the expected childbirth and not be eligible to return until the child was three months old. The plaintiffs' theory was based upon the Equal Protection Clause of the Fourteenth Amendment and the School Boards gave various explanations for their policies. The Court, however, used a Due Process analysis and found that the regulations created a presumption that a teacher more than five months pregnant was presumed incapable of teaching. The Court held such presumption lacked a factual basis.

In the instant case plaintiffs' constitutional claim embraces both Due Process and Equal Protection and the alleged presumption is put forward by the plaintiffs rather than the defendants. Defendants, however, state several bases for the challenged classification:[5]

First, the Commonwealth was not and is not ready to provide the large amounts of money necessary to provide glasses to every recipient needing them "to aid or improve vision." Second, it was not believed, nor is it thought now that the state could not limit provision of glasses to a group considered most in need of them. Third, it was felt that recipients whose eye pathology could be treated or

---

5. It should be noted that these reasons put forth by defendants' attorney were only done so in a brief and are not "record evidence. *Braden v. University of Pittsburgh,* 477 F.2d 1, 6 (3d Cir. 1973). Rather than treat the matter as if no reasons were made a part of the record, I will consider them as if record evidence. Since review of this issue is limited and disposition will not be affected by their use, the parties have not been harmed.

cured by providing glasses were the most immediately needy group of recipients. Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction And/Or Summary Judgment, And In Further Support of Defendants' Motion To Dismiss at 24–25.

It cannot be said that the Due Process claim is frivolous. Rather than being foreclosed by previous decisions, plaintiffs' instant claim appears to have at least arguable merit under *Cleveland Board of Education v. LaFleur, supra*. It is unnecessary to reach the Equal Protection claim, since under the pendent jurisdiction doctrine of *Hagans v. Lavine*, jurisdiction exists to determine the statutory claim.[6]

### 28 U.S.C. § 1331

The jurisdictional requirements under § 1331 are that the claim arises under the "constitution, laws, or treaties of the United States" and that the claim exceeds $10,000 exclusive of interest and costs. The complaint alleges damages in excess of $10,-000.00.

> Jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 in that the matter in controversy exceeds the sum of $10,000, exclusive of interest and costs, and arises under the Constitution and laws of the United States.

Amended Complaint ¶ 2.

No such claim is made as to each of the individual plaintiffs. Because adequate jurisdictional grounds exist under 28 U.S.C. § 1343 which will allow appropriate relief to be afforded plaintiffs, it is unnecessary, and possibly improper, to decide the issue of whether jurisdiction under § 1331 exists under a theory of aggregation espoused by plaintiffs.

### Philadelphia Welfare Rights Organization

Because the cause is to proceed as a class action, it is inappropriate to consider the claims of Philadelphia Welfare Rights Organization. White, Fredricksdorf, Eder and Darragh are named plaintiffs seeking to represent a class of plaintiffs similarly situated. To the extent that WRO's members may be members of such proposed class, these members' rights will be vindicated and WRO's interest furthered.

### Philadelphia County Board of Assistance

This case is to proceed solely under 28 U.S.C. § 1343, the jurisdictional counterpart of 42 U.S.C. § 1983, which provides that:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (emphasis added).

The Philadelphia County Board of Assistance is not a person within the meaning of § 1983. *See City of Kenosha v. Bruno*, 412 U.S. 507, 513, 93 S.Ct. 2222, 2226, 37 L.Ed.2d 109, 116 (1973); *Moor v. County of Alameda*, 411 U.S. 693, 707, 93 S.Ct. 1785, 1794, 36 L.Ed.2d 596, 608 (1973); *Via v. Cliff*, 470 F.2d 271, 275 (3d Cir. 1972); *Tilli v. County of Northampton*, 370 F.Supp. 459 (E.D.Pa.1974); *Cf., Puckett v. Mobile City Commission*, 380 F.Supp. 593 (S.D.Ala. 1974); *Oliver v. Kalamazoo Bd. of Education*, 368 F.Supp. 143 (E.D.Mich.1973), *aff'd*, 508 F.2d 178 (6th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975).

### C. Class Action

Plaintiffs seek class certification under Rule 23(b)(2), Fed.R.Civ.P. The proposed class is defined as consisting

---

**6.** The Equal Protection claim asserts that the classification based upon eye pathology establishes two classes of similarly situated recipients who are treated differently and that this discrimination is without a rational basis. Par-

enthetically, this claim appears to be at least as meritorious as the Due Process claim. *See, e.g., Hagans v. Lavine, supra;* and *Williams v. Wohlgemuth, supra.*

of all Pennsylvania recipients of medical assistance for whom eyeglasses are medically necessary in the judgment of a physician skilled in diseases of the eye or an optometrist, and who have been or will be denied authorization by the Pennsylvania Department of Public Welfare, pursuant to the Department of Public Welfare Manual §§ 9740 and 9743 to receive eyeglasses in that the defendants provide eyeglasses only to persons with eye disease or pathology and denied them to persons whose need for eyeglasses is due to reasons other than disease or pathology.

Named plaintiffs, Ralph White, Bernice Fredricksdorf, Michael Darragh and Charles Eder, present claims which are typical of the proposed class. All are poor and eligible for medical assistance under 42 U.S.C. § 1396; all were examined by qualified medical personnel who determined that eyeglasses were necessary for the named plaintiffs; none had eye pathology or disease; all applied to the Pennsylvania Department of Public Welfare for eyeglasses and were denied assistance under Pennsylvania Department of Public Welfare Manual §§ 9740 and 9743.

As to plaintiff William B. Johnson, the allegations in the complaint are not sufficiently clear to make the necessary findings for class determination. It is not stated who prescribed the eyeglasses, nor whether they were necessary within the meaning of the regulations, 45 CFR § 249.10(b)(12)(iv) which require that the eyeglasses be deemed "necessary" to aid or improve vision by either a physician skilled in diseases of the eye or an optometrist. Moreover, there appears to be a lapse of more than a year since his examination, so that it is not certain whether corrective lenses are still "necessary."

█ Darragh, however is a plaintiff typical of the class. This is true even though his claim is not for eyeglass *lenses* but for *frames.* The regulation definition of eyeglasses includes frames. 45 CFR § 249.-10(b)(12)(iv). Thus, Darragh may represent the claims of others in the class, within the proposed definition.

To proceed as a class, plaintiffs must first satisfy the requirement of Fed.R.Civ.P. 23(a).[7] It is clear that plaintiffs meet the requirements of numerosity, commonality, typicality and adequacy of representation. Defendants have virtually conceded this. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction and/or Summary Judgment, and in Further Support of Defendants' Motion to Dismiss at 2.

█ Plaintiffs propose certification under 23(b)(2) which provides:

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The proposed class definition, the factual allegations of the named plaintiffs and the legal issues in dispute are such that the inescapable conclusion is that the instant case is particularly well suited for treatment as a (b)(2) class, in that defendants have acted on grounds applicable to the class. *See Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 248 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); Advisory Committee's Note to Proposed Amendments to Rule 23, 39 F.R.D. 69, 102 (1966).

7. Rule 23 provides in pertinent part:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The definition of the class as proposed is adequate, clear and not overly broad. Defendants' argument that plaintiffs "who have been denied" eyeglasses in the past are foreclosed by *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), is not well founded. *Edelman* involved claims for monetary damages for past injuries while prospective injunctive and declaratory relief is sought in the instant case. Moreover, relief to be awarded to a class member previously denied eyeglasses will be the same as that given to a class member who will be denied eyeglasses. In each case the class member must first be examined by an optometrist or physician skilled in diseases of the eye who prescribes eyeglasses as necessary to aid or improve vision and then present this claim to the appropriate agency.

 Defendants argue that notice is required to prospective class members in a "(b)(2)" class. Notice in a "(b)(2)" class is not generally required under rule 23. There may be situations, however, in which due process considerations would be such that a district court, in its discretion, requires that notice of the pendency of the class action be made to prospective class members. *Wetzel, supra* at 254–57. such considerations do not exist in the instant case.

### D. *Statutory Claim*

Plaintiffs assert that the Commonwealth of Pennsylvania's Medical Assistance Plan fails to comport with the Social Security Act, title XIX, Medical Assistance Program, 42 U.S.C. § 1396 *et seq.*, and the Regulations promulgated thereunder, 45 CFR § 249.10 *et seq.* Pennsylvania has elected to participate in the Medical Assistance program, on two levels. It will provide medical assistance to the categorically needy and the medically needy.[8]

 To participate in the program the state must at least provide care for the categorically needy. 42 U.S.C. § 1396a(a)(10); 45 CFR § 249.10(a)(1). The plan must include at least the first five services listed in 42 U.S.C. § 1396d(a). These are (1) inpatient hospital services; (2) outpatient hospital services; (3) other laboratory and X-ray services; (4) skilled nursing facility services; (5) physician services. 42 U.S.C. § 1396a(a)(13)(B); 45 CFR § 249.10(a)(1); 249.10(b)(1)–(5) services. The state may elect to provide other services from the total of fourteen medical services enumerated at § 1396d(a). The state, if it so chooses, may also include the medically needy in the medical assistance plan. The medically needy must be provided either the first five items of § 1396d or *any* seven of the fourteen services so enumerated. 42 U.S.C. § 1396a(a)(10)(C); 45 CFR § 249.10(a)(2). If, however, the state plan includes the medically needy, then the plan must provide to the categorically needy the services provided to the medically needy. 42 U.S.C. § 1396a(a)(10)(B); 45 CFR § 249.19(a)(6); *Doe v. Beal, supra* at 617.

 Pennsylvania's plan provides the categorically needy with the five required items, but the medically needy receive the seven optional services, one of which is eyeglasses. Thus, Pennsylvania provides eyeglasses to the categorically needy, and the medically needy, but makes the following limitations:

Not provided for ordinary refractive errors, except for school children. Limited to persons with eye pathology. Prior approval required.

---

**8.** Categorically needy and medically needy are defined in 45 CFR § 248.10(a)

(1) The term "categorically needy" refers to an individual who is receiving financial assistance under the State's approved plan under title I, IV–A, X, XIV or XVI of the Social Security Act, or is in need under the State's standards for financial eligibility in such plan.

(2) The term "medically needy" refers to an individual whose income and resources equal or exceed the State's standards under the appropriate financial assistance plan but are insufficient to meet his costs for medical insurance premiums and for necessary medical and remedial care and services recognized under State law but not encompassed in the State plan for medical assistance, plus his costs for medical and remedial care and services included in the State plan.

State Plan for Medical Assistance Under Title XIX of the Social Security Act.

This restriction conflicts with the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and its regulations, 45 CFR § 249.10 *et seq.* As *Doe v. Beal, supra* at 620, held, the state has discretion under the Act "to define the medical conditions for which treatment is 'necessary,'" but only if the standards imposed by the state are reasonable for carrying out the objectives of the Act.

██ Under the regulations 45 CFR § 249.10(b), federal participation is available for services "under the State plan which meet the following definitions." Eyeglasses are defined in 45 CFR § 249.-10(b)(12)(iv)—

"Eyeglasses" are lenses, including frames when necessary, and other aids to vision prescribed by a physician skilled in diseases of the eye, or by an optometrist whichever the patient may select, to aid or improve vision.

Thus, eyeglasses are to be provided to improve vision, and are not limited to recipients suffering from eye pathology. The regulations require a participating state to

Specify the amount and/or duration of each item of medical and remedial care and services that will be provided to the categorically needy and to the medically needy, if the plan includes this latter group. Such items must be sufficient in amount, duration and scope to reasonably achieve their purpose. With respect to the required services for the categorically needy . . . the State may not arbitrarily deny or reduce the amount, duration and scope of, such services to an otherwise eligible individual solely be-

cause of the diagnosis, type of illness or condition.

45 CFR § 249.10(a)(5)(i).

This regulation creates two criteria which are violated by defendants. The services provided must be sufficient in amount, scope and duration to achieve their purpose and the state may not arbitrarily deny or reduce the amount, duration and scope of required services to the categorically needy because of a condition.

As to the first criteria, the state argues that "their purposes" refer to the state's purposes. This argument is so utterly devoid of merit that it warrants no discussion. It is virtually unthinkable that the Secretary of Health, Education and Welfare would give the state virtually unbridled discretion in the form of such a "loophole". The plain meaning is that "their" refers to the items of service.[9] Thus, in providing eyeglasses, a state must provide the scope of service sufficient to achieve the purpose of the item in the scheme of the federal program. *Cf., Doe v. Beal, supra* at 621. As the definition makes clear, the purpose of eyeglasses is to aid or improve vision not merely to deal with eye disease or pathology.

Affidavits of Owen Belmont, M.D., and Joseph H. Calhoun, M.D., presented to the court by the plaintiffs, state that "refractive error is correctible through the provision of appropriate eyeglasses, while disease or pathology cannot, in many cases, be arrested or treated with the best of medical care."[10] Thus, defendants do not provide the amount, scope and duration of services necessary to achieve the purposes stated in the regulations, *viz.*, to improve vision. To

---

9. The Regional Commissioner of the United States Department of Health, Education and Welfare's Social and Rehabilitation Services, Alwyn Carty, does not agree with the defendants on this point. Affidavit and letter of Alwyn Carty. Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction and/or Summary Judgment and in Further Support of Their Motion to Dismiss. It should be noted that defendants have sought to use an opinion letter by Commissioner Carty as expert opinion that the Pennsylvania regulations are in conformity with the federal regula-

tions. This court believes that Mr. Carty's opinion is just that—an opinion and is entitled to no more weight than an argument of counsel. It is, however, interesting that the expert opinion proferred by defendants does not substantiate one of the defendants' theories.

10. Affidavit at ¶ 7. Drs. Belmont and Calhoun are both Board Certified Ophthalmologists with impressive academic, teaching and surgical backgrounds. For all intents and purposes, the content of each of their affidavits are the same.

condition eyeglasses on eye disease or pathology is counterproductive. Refractive error can be more of a visual impairment than eye disease or pathology. Moreover, while refractive error can be corrected with appropriate eyeglasses, eye disease or pathology very often cannot.[11] Drs. Belmont and Calhoun assert that of the eye diseases for which defendants provide eyeglasses [12]—

Glaucoma
Uveitis
Aphakia
Congenital Cataract
Dislocated lens
Convergent Squint
Divergent Strabismus
Residual or quiescent disease of the eye
Amblyopia exanopsia
Diplopia aided by prisms
One eye enucleated
One eye which cannot be corrected to 20/400 or better—

eyeglasses will be helpful in arresting the disease process only for convergent and divergent squint and amblyopia in *children*.[13]

Defendants also violate the second criteria of 45 CFR § 249.10(a)(5)(i) because they arbitrarily deny required services to the categorically needy solely because of a condition—refractive error. Such a denial under the medical assistance program was held to be in conflict with the federal medical assistance program. *Doe v. Beal. Doe* held that Pennsylvania's regulations which denied therapeutic abortions to women through the second trimester of pregnancy, who were otherwise eligible under the medical assistance program, but allowed payments for full term pregnancies conflicted with 45 CFR § 249.10(a)(5)(i). *Doe* is dispositive of the instant case which presents facts even more compelling than those found in *Doe*.

The plaintiffs in *Doe* alleged that their rights to therapeutic abortions stemmed from the fact that Pennsylvania is required to furnish physicians' services, inpatient hospital services, outpatient hospital services and family planning services to the medically needy. 42 U.S.C. § 1396a(a)(13)(B). The court stated that although a state could impose reasonable standards which would have the effect of not funding *every* procedure which a physician could legally prescribe such as cosmetic surgery, a state is required to fund *necessary* medical procedures ordered by a physician. *Doe v. Beal, supra* at 619–620. In *Doe* the court found that pregnancy was the condition, and therapeutic abortion a necessary treatment when prescribed by a physician.

■ It is clear that eyeglasses are a required service to the categorically needy under the Pennsylvania plan. Because Pennsylvania provides eyeglasses to the medically needy, it must provide the same to the categorically needy. See discussion at pp. 1152–1153, *supra*. Licensed physicians and/or optometrists have determined that the plaintiffs required eyeglasses as medical treatment necessary to aid or improve vision. At this juncture the issue is the characterization of the condition. Defendants argue that the condition to be treated is eye disease or pathology. While this may appear plausible, its plausibility is only superficial and does not withstand analysis. The definition of eyeglasses found in the regulations, 45 CFR § 249.10(b)(12)(iv), states that eyeglasses are to improve vision. It does not mention curing eye disease or pathology. The affidavits of Drs. Belmont and Calhoun make clear that eyeglasses are an ineffective means to deal with eye disease or pathology. Thus, denominating the condition for which eyeglasses are to be prescribed as eye disease or pathology is not rational in light of medical reality. It is overly narrow and incapable of effectuating the objectives of the federal program.

The condition is more properly characterized as visual impairment. This is in conformity with the purposes of the federal program and will best carry out its objec-

---

**11.** *Id.*

**12.** *Id.* at ¶ 9(b).

**13.** Children receive eyeglasses under a different program. 42 U.S.C. § 701 *et seq. See also*, 45 CFR § 249.10(a)(3)(10).

tives. Applying this analysis to Pennsylvania's regulations, it is plain that limiting eyeglasses to recipients who suffer from eye pathology and denying eyeglasses to recipients with refractive error is in conflict with 45 CFR § 249.10(a)(5)(i). *Doe v. Beal* held that necessary medical treatment of conditions as prescribed by a physician was required to be funded by the state under Title XIX. *Doe* was premised mainly on the fact that physician's services, 42 U.S.C. § 1396d(a)(5), 45 CFR § 249.10(b)(5), are a mandatory item of medical service. 45 CFR § 249.10(a)(1). In the instant case not only are physician's services required under Pennsylvania's plan, but so are eyeglasses which are to be used to improve or aid vision. Therefore, this case presents a more compelling legal situation than *Doe.*

Pennsylvania Department of Public Welfare Manual § 9740–43 is in conflict with 42 U.S.C. § 1396 and 45 CFR § 249.10(a)(5)(i). If the state provides eyeglasses to the medically needy, it must do so for the categorically needy. By limiting eyeglasses as it does, Pennsylvania fails to comport with 45 CFR § 249.10(a)(5)(i) on two independent grounds—it fails to achieve the intended purpose of the federal medical assistance program and it violates *Doe v. Beal* because required services are arbitrarily denied to the categorically needy because of a condition. As long as the state provides eyeglasses to the medically needy, it may not impose such a limitation.

I am aware that as a consequence of this decision, Pennsylvania may elect to eliminate eyeglasses as one of the optional services. As an extreme measure, it might elect to discontinue entirely its participation in the federal medical assistance program under the Social Security Act. Thus, plaintiffs may sustain a pyrrhic victory that defeats rather than accomplishes their purposes.

## ORDER

AND NOW, this 21st day of April 1976, plaintiffs' motion for class action determi-

nation is GRANTED, and this action is CERTIFIED as a class action in which the class is defined to consist of

All Pennsylvania recipients of medical assistance under 42 U.S.C. § 1396 and all Pennsylvania citizens eligible for medical assistance under 42 U.S.C. § 1396 for whom eyeglasses have been determined to be medically necessary by an optometrist or physician skilled in the diseases of the eye, but who do not suffer from eye disease or pathology and who properly apply for eye glasses under the medical assistance program.

Defendants, Pennsylvania Department of Public Welfare and Philadelphia County Board of Assistance are DISMISSED from this action.

Plaintiffs' motion for summary judgment is GRANTED to the extent that defendants are hereby enjoined from the further operation of Pennsylvania Department of Public Welfare Manual—DPW–Pa. §§ 9740 and 9743 insofar as such regulations deprive the members of the within class from obtaining eyeglasses under the Medical Assistance Program, 42 U.S.C. § 1396.

Plaintiffs shall, on or before May 3, 1976, file with the court all documents and briefs in support of their claim for costs and attorneys fees. Defendants shall, on or before May 12, 1976, file all pertinent documents on the issue of costs and attorneys fees. A conference is scheduled for 11:00 A.M., May 13, 1976 in Chambers, Room 14614, U.S. Courthouse, Philadelphia, Pennsylvania.