Ralph WHITE, William B. Johnson, and Philadelphia Welfare Rights Organization, et al., on behalf of themselves and all others similarly situated, Appellees,

v.

Frank S. BEAL, Individually and as Secretary of the Department of Public Welfare, Glenn Johnson, Individually and as Director, Bureau of Medical Assistance, Department of Public Welfare, Don Jose Stovall, Individually and as Executive Director of the Philadelphia County Board of Assistance, the Pennsylvania Department of Public Welfare, and the Philadelphia County Board of Assistance, Appellants.

No. 76–1755.

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1977.

Decided May 5, 1977.

Robert P. Kane, Atty. Gen., M. Faith Angell, Howard M. Holmes, Asst. Attys. Gen., Michael von Moschzisker, Deputy Atty. Gen., Eastern Regional Director, Philadelphia, Pa., for appellants.

R. Michael Kemler, Stephen F. Gold, Community Legal Services, Inc., Philadelphia, Pa., for appellees.

Before SEITZ, Chief Judge, and VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In administering its federally aided medical assistance program, Pennsylvania chose to limit its expenditures for eyeglasses by making them available on the basis of etiology rather than medical necessity. The district court determined that the classification was in conflict with the underlying federal statute, and enjoined application of the restrictive state regulations. We affirm.

The plaintiff class is composed of individuals generally qualifying for benefits under Pennsylvania's medical assistance program established under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.* The class members are poor persons who, though not suffering from eye disease, need eyeglasses to correct refractive error. Under the Pennsylvania Department of Public Welfare's regulations, eyeglasses are provided only for treatment of eye disease or pathology.[1] Accordingly, the state refused to furnish this benefit to plaintiffs.

Suit was brought under 42 U.S.C. § 1983 in the district court against the officials who administer the state program, alleging violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and asserting a pendent federal statutory claim. The district court decided the pendent claim and, concluding that the state regulations were in conflict with the federal statute and regulations, entered summary judgment for the plaintiffs. *White v. Beal,* 413 F.Supp. 1141 (E.D.Pa. 1976).

The defendants vigorously contest jurisdiction on the ground that the plaintiffs' constitutional claims obviously lack merit. The district court, following the procedure set out in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), determined first that the plaintiffs' constitutional claims had at least "arguable merit," and then proceeded to a consideration of the statutory claim which proved to be dispositive.

In *Hagans v. Lavine, supra,* a welfare recipient challenged a state regulation which allowed recoupment for improper rent payments on the grounds that it violated the Equal Protection and Supremacy Clauses. The Supreme Court found the Equal Protection claim not " 'so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy . . . .' " 415 U.S. at 543, 94 S.Ct. at 1382 (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–667, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)). Thus, there was power to entertain the Equal Protection claim under 28 U.S.C. § 1343(3). Such jurisdiction having been established, the pendent conflict between the state regulations and federal statute could be adjudicated without deciding the constitutional issues. 415 U.S. at 543–550, 94 S.Ct. 1372.

---

1. The pertinent portion of the DPW–PA manual reads as follows:

"9743 *GLASSES*

Glasses are not provided for ordinary refractive errors; glasses are authorized only in cases which are primarily pathologic and in which glasses would be expected to have therapeutic or sight-saving value in adjunct to medical care such as in the following general conditions:
   a. Glaucoma
   b. Uveitis
   c. Aphakia, when acuity in the aphakic eye or eyes can be increased to a beneficial degree.
   d. Congenital cataract

   e. Dislocated lens, when indicated
   f. Convergent Squint
   g. Divergent strabismus
   h. Residual, or quiescent disease of the eyes
   i. Amblyopia exanopsia under treatment
   j. Diplopia aided by prisms
   k. One eye enucleated, or one eye which cannot be corrected to 20/400 (3/60) or better
'Safety' lens (plastic, case hardened or three millimeter safety glass) and glass safety frames as approved by the American Standards Association are authorized in all cases.
   Maximum fees for glasses are listed in Section XII, Appendix I of Section 9411."

In the case *sub judice*, the plaintiffs allege a denial of Equal Protection because the state regulations establish an irrational, invidious classification that serves no legitimate public interest. After the district court entered judgment in the case at bar, we decided *Williams v. Wohlgemuth*, 540 F.2d 163, 166 (3d Cir. 1976), where we said:

"Even '[i]n the area of economics and social welfare,' '[s]tate laws and regulations must still "be rationally based and free from invidious discrimination."' We cannot say that the emergency assistance plan adopted by Pennsylvania is so unquestionably rational that the constitutional challenge is wholly insubstantial." (footnotes omitted)

*Williams'* Equal Protection analysis controls the jurisdictional question, and we need not rely solely on the Due Process approach utilized by the district court.

The complaint alleges that:

"Defendants [sic] practice of providing remedial eye care only to medical assistance recipients having eye pathology sets up two groups of such recipients who, although similarly situated, are treated differently without any rational basis therefore. First, there are those people with visual impairment and having pathology who do receive remedial eye care; second, there are those people with an equal or greater degree of visual impairment, but having no pathology, who do not receive such care."

Despite the state's constitutional discretion in the administration of public welfare projects, this classification is not so "unquestionably rational" as to render an Equal Protection claim insubstantial.[2] We therefore find that jurisdiction exists. In this situation, as in *Hagans v. Lavine, supra*, there is no need to decide whether invocation of the Supremacy Clause alone satisfies the jurisdictional requirements of 28 U.S.C. § 1343.

This court in *Doe v. Beal*, 523 F.2d 611 (3d Cir. 1975), *cert. granted*, 428 U.S. 909, 96 S.Ct. 3220, 49 L.Ed.2d 1216 (1976), reviewed Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.*, in some detail. Described as an effort in "cooperative federalism," Title XIX is intended to aid the needy in meeting the expense of health care. The Act requires a participating state to provide five specified health services to the "categorically needy," those in the most severe financial straits. If the state wishes to maintain a more comprehensive program, it may provide seven of sixteen listed benefits to the less poor, characterized as the "medically needy." 42 U.S.C. § 1396a(a)(13)(C). A state providing specific services for the "medically needy" must also provide them for the "categorically needy." *Doe v. Beal, supra* at 619; 42 U.S.C. § 1396a(a)(10)(B); S.Rep.No.404, 89th Cong., 1st Sess. (as found in 1965 U.S.Code Cong. and Admin. News, p. 2017). Moreover, all persons within a given category must be treated equally. 42 U.S.C. §§ 1396a(a)(10)(B)(i), (C)(ii). The defendants do not dispute these general propositions. Basically, they contend that because of limited resources, the state has chosen to restrict payment for eyeglasses to those individuals it considers most in need of the aid, those having pathology or disease of the eye. The soaring cost of medical assistance programs is a matter of national concern, and the state's interest in financial responsibility may not be treated lightly. Nevertheless, we do not believe that the state has applied a permissible method of obtaining economies in its administration of the medical assistance program.

"[t]he Equal Protection claim asserts that the classification based upon eye pathology establishes two classes of similarly situated recipients who are treated differently and that this discrimination is without a rational basis. Parenthetically, this claim appears to be at least as meritorious as the Due Process claim." *White v. Beal, supra* at 1149–1150 (citations omitted).

---

2. In treating this phase of the case, the district judge observed: "It must be noted that previous decisions which may render a claim doubtful or of questionable merit, do not render those claims insubstantial. * * * It cannot be said that the Due Process claim is frivolous. Rather than being foreclosed by previous decisions, plaintiffs' instant claim appears to have at least arguable merit  . . . ." Further,

We do not decide the merits of this appeal on the Equal Protection theory and, consequently, such cases as *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972), and *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), are not controlling. We are not confronted, as was the *Dandridge* Court, with a classification which, though imperfect, had a reasonable basis in a constitutional context.

The issue presented here is whether a state regulation that denies benefits to some and grants them in full to others, based solely on the cause of the disability and not on medical necessity, is in keeping with the statutory plan. We are concerned not with invidious discrimination as an equal protection constitutional concept but with a classification out of harmony with a federal statute. *Williams v. Wohlgemuth, supra.*

The defendant notes that in *Doe v. Beal, supra,* this court recognized the state's broad discretion to define the medical conditions for which treatment is "necessary" within the meaning of the Act. From this, the state argues that it chose to treat the "condition of eye disease" and not refractive error. The plaintiff on the other hand contends the "condition" is visual impairment. The state says it exercised its discretion to provide eye glasses only for treatment of eye disease because:

"First, the Commonwealth was not and is not ready to provide the large amounts of money necessary to provide glasses to every recipient needing them 'to aid or improve vision.' Second, it was not believed, nor is it thought now that the state could not limit provision of glasses to a group considered most in need of them. Third, it was felt that recipients whose eye pathology could be treated or cured by providing glasses were the most immediately needy group of recipients." 413 F.Supp. at 1149–1150.

Congress recognized the financial pressures upon the states and provided that, if a medical assistance plan was adopted, the state could pay ". . . part or all of the cost of the . . . care and services." 42 U.S.C. § 1396d(a). The state interprets this authorization essentially as permission to meet part of the total cost by paying the expenses of some who would benefit (those requiring eyeglasses because of pathology) but paying nothing to others (those requiring them because of eye defects) who have the same need for the lenses. In our view, the statute does not grant such discretion to the state. Rather, it requires an equitable distribution of the total funds available among all in need of the service, with a consequent sharing of benefit and hardship.

The optional service at issue, for which a state may choose to pay all or part, is set out in 42 U.S.C. § 1396d(a)(12):

"prescribed drugs, dentures, and prosthetic devices; and eyeglasses prescribed by a physician skilled in diseases of the eye or by an optometrist, whichever the individual may select . . . ."

Significantly, the only statutory restriction on furnishing eyeglasses is that they be prescribed by a physician or an optometrist. The state regulations add another qualification—the glasses must be necessary because of pathology. Limitation of eligibility is based on the state's assumption that this class of visually handicapped persons is most in need of spectacles. Assuming that medical need is a valid measurement of eligibility, the state's factual premise, however, is not supported by the record.

The plaintiffs submitted the affidavits of two qualified ophthalmologists stating that some persons with refractive error, but without eye pathology, may be far more visually handicapped than those who have a disease of the eye.[3] Moreover, the physi-

3. The affidavits explain that a refractive error is a physical state of the eye components causing visual impairment. The severity of the refractive error depends on the size and shape of the eye with respect to the optical system. An eye that is too long will produce nearsightedness (myopia), and one that is too short causes farsightedness (hyperopia). Eyeglasses

cians maintain that, while eyeglasses will correct a refractive error, they are not helpful in many cases of eye disease.

The state has not controverted these affidavits. Thus, the restriction on furnishing eyeglasses results neither in furnishing them to those who are the most visually handicapped (and thus most in need) nor to those whose impairment would most likely be improved. On this record, therefore, the state's classification, based on diagnosis, is little more relevant to health care needs than one based on the color of eyes. We find nothing in the federal statute that permits discrimination based upon etiology rather than need for the service. By permitting the state plans to provide only part of the cost, the statute must be construed to envision an evenhanded sharing of benefits and burdens among those having the same needs.[4] The state plan's classification is arbitrary since it is based upon a factor not reasonably related to the medical need.[5] We conclude that when a state decides to distribute a service as part of its participation in Title XIX, its discretion to decide how the service shall be distributed, while broad, is not unfettered: the service must be distributed in a manner which bears a rational relationship to the underlying federal purpose of providing the service to those in greatest need of it.

Further support for our conclusion is found in the regulations promulgated by the Department of Health, Education, and Welfare.

45 C.F.R. § 249.10(a)(5)(i) provides that a state plan must:

"Specify the amount and/or duration of each item of medical and remedial care and services that will be provided to the categorically needy and to the medically needy, if the plan includes this latter group. Such items must be sufficient in amount, duration and scope to reasonably achieve their purpose. With respect to the required services for the categorically needy . . . *and the medically needy* . . . the State may not arbitrarily deny or reduce the amount, duration, or scope of, such services to an otherwise eligible individual solely because of the

---

will correct refractive errors when there is significant visual impairment but may not be necessary when the refractive error is minor in degree.

The affidavit of Dr. Belmont reads in part: "b. The Pennsylvania Department of Public Welfare provides eyeglasses for refractive error only where the refractive error is accompanied by an eye disease or pathology. (The correction of the refractive error with eyeglasses is thus tied to the treatment of the eye disease). To condition the correction of refractive error on the presence of pathology and, further, to insist that provision of eyeglasses be an adjunct to the medical care directed at alleviating eye disease confuses two disabilities each of which may be separately treated so as to 'aid or improve vision'. Thus, in nearly all cases when persons have refractive error, eyeglasses will aid or improve vision. However, it is only in a very limited category of diagnoses that provision of eyeglasses helps in arresting the disease process, i. e., convergent and divergent squint, and in the treatment of amblyopia in young children. In all the other disease categories listed in the Department of Public Welfare's regulations, Pa. DPW–PA Manual § 9743, including amblyopia in adults, provision of eyeglasses will not assist in the treatment of disease. Conversely, treatment for eye disease, including the diseases listed in the Department's regulations, even if successful in curing the disease, will not help to correct an accompanying refractive error."

4. We have examined the legislative history, *see* 1965 U.S.Code Cong. and Admin.News, p. 1943, and find it unenlightening on the point at issue in this litigation. It is interesting, however, that amendments to the Social Security Act's, program for medical care for the aged adopted at the same time as Title XIX, were explicit in denying payment under Title XVIII for ". . . eyeglasses, or eye examinations for the purpose of prescribing fitting or changing eyeglasses . . .." 42 U.S.C. § 1395y(a)(7). As the Senate report explained, payment could be made for medical treatment required because of cataracts but not for routine eye care (p. 1990). Thus, it is arguable that had Congress intended a similar exclusion under Title XIX, it would have said so.

5. This case does not present the problem of whether Congress could constitutionally make such a classification based upon financial or other policy considerations. *Legion v. Richardson*, 354 F.Supp. 456 (S.D.N.Y.), *aff'd, sub nom. Legion v. Weinberger*, 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973). *See also Mathews v. de Castro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).

diagnosis, type of illness or condition. Appropriate limits may be placed on services based on such criteria as medical necessity or those contained in utilization or medical review procedures." (emphasis supplied)

The regulation was amended in 1974 to take its present form. At that time, the Department of Health, Education, and Welfare summarized the comments received and stated the agency's response:

"The prohibition against limitation on services based on diagnosis is very good; on the other hand, it may undercut utilization review. The regulation has been clarified to indicate that the prescription [sic] relates to arbitrary limitations, not those appropriate to medical necessity or utilization review." 39 Fed.Reg. 16970 (May 10, 1974).

The regulations permit discrimination in benefits based upon the degree of medical necessity but not upon the medical disorder from which the person suffers.[6] Thus, a state plan providing eyeglasses only to those with a specified amount of visual impairment, regardless of its cause, would be consistent with the regulations. The reason for the prohibition against the deprivation of benefits based on diagnosis is illustrated by the situation described in the ophthalmologists' affidavits. A person who cannot see clearly beyond a short distance from his face because of a refractive error may not be given eyeglasses under the Pennsylvania plan, but a person with only slightly impaired vision, caused by pathology, may receive aid. This is not the type of economic rationing contemplated by the statutes or regulations. *Williams v. Wohlgemuth, supra.*

 We conclude, therefore, that the regulations of the Pennsylvania Department of Welfare are in conflict with the Social Security Act and are invalid in those portions which restrict the provision of eyeglasses under 42 U.S.C. § 1396d(a)(12) to those having a visual impairment caused by eye disease. Accordingly the judgment of the district court will be affirmed.

6. In a letter to counsel for the defendants, the Regional Commissioner for Social and Rehabilitation Services of HEW in Philadelphia stated that the key word in the regulation was "required." In his opinion, the restrictions apply only to the first five items set forth in 42 U.S.C. § 1396d(a) for the categorically needy "and for the medically needy, the first five items *or any seven of the sixteen items as set forth in* [§ 1396d(a)]." (emphasis supplied). He concludes that Pennsylvania has not included item (12) [eyeglasses] as one of the "required" services for the medically needy. However the state plan printed at Appendix 63a lists item (12) but purports to limit it to pathological conditions.

It may be argued that once a state adopts an optional service as part of its plan, then it becomes "required" because the state must adhere to its plan to comply with the statute. At best, the regulation on this point is ambiguous, and we would expect that if the Regional Commissioner's interpretation was intended, the regulation could easily have been worded to make that meaning clear. In any event, the letter merely expresses the writer's opinion, and is not an official interpretation by HEW.