540 F.2d 163
 Viola WILLIAMS,
and
Philadelphia Welfare Rights Organization, by Louise
Brookins, its Chairwoman and Trustee ad litem, for
themselves and all others similarly situated
v.
Helene WOHLGEMUTH, Secretary, Department of Public Welfare,
et al., Appellants.
 No. 75-2239.
 United States Court of Appeals,
Third Circuit.
 Argued May 26, 1976.
Decided July 20, 1976.
 
 Stephen F. Gold, Community Legal Services, Inc., Philadelphia, Pa., for appellees.
 Howard M. Holmes, Asst. Atty. Gen., Michael von Moschzisker, Deputy Atty. Gen., Philadelphia, Pa., Robert P. Kane, Atty. Gen., Harrisburg, Pa., for appellants.
 Before ADAMS and HUNTER, Circuit Judges, and SCHWARTZ, District Judge.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 We are asked in this appeal to determine the validity of certain regulations of the Pennsylvania Department of Public Welfare (DPW). The regulations in question make emergency assistance payments available to persons whose special needs for such funding result from either of two enumerated causes civil disorder or natural disaster but not from any others.
 
 A.
 
 2
 Congress amended the Social Security Act in 1968 by authorizing the states to provide emergency assistance payments to needy families with children.[1] The legislation permitted the states to deliver money, payments in kind, medical care, or services to needy families with children in order "to avoid destitution of such child or to provide living arrangements in a home for such child . . . ."[2] Adoption of an emergency assistance plan by a state is optional,[3] but fifty percent of the total amount expended by a state that chooses to utilize the program is reimbursed by the federal government.[4]
 
 
 3
 The Commonwealth of Pennsylvania elected to initiate an emergency assistance program in 1969. Its plan made the assistance available only to those needy families whose destitution was caused by civil disorder.[5] Three years later, the arrangement was amended to allow assistance for emergency needs caused by natural disaster as well.[6]
 
 
 4
 On December 11, 1974 Viola Williams and the Philadelphia Welfare Rights Organization filed a class action suit against the Secretary of DPW and officials of the Philadelphia County Board of Assistance, challenging the validity of Pennsylvania's emergency assistance plan. The gravamen of the complaint was that if a state chooses to provide any emergency assistance payments, it must make them available to all families with children facing destitution, regardless of the cause of the emergency. Specifically, it was alleged that Williams could not afford to pay her electric bill; that she and her child were in an emergency situation because the electrical service to her home had been terminated; and that DPW refused to provide emergency assistance payments to her, since her emergency was not caused by civil disorder or natural disaster. The complaint further alleged that the named plaintiffs represented a class composed of "all Pennsylvania recipients of public assistance who are denied a prompt emergency assistance grant." It was urged that the Pennsylvania plan violated the Social Security Act and the equal protection and due process clauses of the Constitution.
 
 
 5
 Six days after the complaint was filed, Williams received from DPW a lump sum payment sufficient to pay her past-due electric bill. It came after a check of her records by the Department and the resultant discovery that errors had been committed on payments previously made to her. The new payment solved her exigent needs. Presumably because Williams was therefore no longer able to represent the class, a motion to intervene as plaintiffs was filed two days later on behalf of four other individuals. Three of them Mary Witt, Beatrice Carmona, and Esther Saez averred that they had received notices of eviction from their landlords, and could not find other housing because they could not afford the security deposit. Carmona and Saez further stated in affidavits supporting the motion to intervene that their public assistance caseworkers had told them that DPW would not provide assistance to cover the deposit or any advance rental payments that might be required. The fourth individual, Geraldine Little, claimed that she had an outstanding water bill that she could not pay, and that she was faced with termination of her water service.
 
 
 6
 The district court held a hearing on December 20, the day after the motion to intervene had been filed. After the hearing, that court took under advisement the motion to intervene, the question of class action certification, and the merits of the case.[7] In a memorandum opinion and order dated August 22, 1975, the district court granted the motion to intervene, certified the proposed class, and held that the Pennsylvania emergency assistance plan conflicts with the applicable federal statute and the regulations promulgated under it. The defendants took an appeal.
 
 
 7
 We affirm.
 
 B.
 
 8
 As a preliminary matter, we must address two contentions raised by the defendants which, if correct, would require reversal of the judgment of the district court without the necessity of reaching the merits.
 
 
 9
 First, the defendants urge that the district court did not have jurisdiction over the subject matter. This contention is not meritorious.
 
 
 10
 The complaint alleged that Pennsylvania's emergency assistance program violated 42 U.S.C. § 1983 by depriving the plaintiffs of the equal protection of the laws and of due process of law. A pendent "statutory" claim that the Pennsylvania plan conflicts with the Social Security Act, and thus is in violation of the supremacy clause,[8] was also included. The complaint further asserted that the district court had jurisdiction under 28 U.S.C. § 1343(3), which provides the federal courts with power to adjudicate civil actions instituted to "redress the deprivation, under color of any State . . . regulation, . . . of any right . . . secured by the Constitution . . . ."
 
 
 11
 In Hagans v. Lavine,[9] the Supreme Court upheld the decision of a district court to take jurisdiction in a similarly structured suit, one also attacking a state's welfare program. The Court ruled in Hagans that the district court had jurisdiction over the case if "the constitutional claim . . . was of sufficient substance to support federal jurisdiction."[10] A claim is sufficient to confer such jurisdiction, the Court stated, if it is not "wholly insubstantial" or "wholly frivolous."[11]
 
 
 12
 Even "(i)n the area of economics and social welfare,"[12] "(s)tate laws and regulations must still 'be rationally based and free from invidious discrimination.' "[13] We cannot say that the emergency assistance plan adopted by Pennsylvania is so unquestionably rational that the constitutional challenge is wholly insubstantial.[14] Thus, the district court properly took jurisdiction over the case.
 
 
 13
 Second, it is contended by the defendants that there was no plaintiff with standing to sue as an individual or on behalf of the class at the time the district court certified the class and decided the case.
 
 
 14
 The power of federal courts to adjudicate disputes is limited by article III of the Constitution to actual cases and controversies. For our purposes here, this requirement means, in the words of the Supreme Court in Sosna v. Iowa,[15] that "(t)here must . . . be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23, (and that) there must be a live controversy at the time this Court reviews the case."[16]
 
 
 15
 We must, then, determine whether the present case complied with the three branches of the Sosna standard. We find that it did.
 
 
 16
 (1) When the complaint was filed, plaintiff Williams alleged that DPW had improperly refused to issue her an emergency assistance check. There was thus a controversy between at least one plaintiff and the defendants at that time.
 
 
 17
 (2) When the district court certified the class action, the motion of four other individuals to intervene as plaintiffs was simultaneously granted. Each of them had made the same claim that Williams had that DPW had improperly refused to pay emergency assistance. In the district court's memorandum opinion, it was observed that "some" of the claims of the intervenors had been remedied by aid received from other sources. We understand that statement to mean that some had not. But the district court made clear that the intervenors were entitled to litigate the interests of the class because the issue presented was "capable of repetition, yet evading review." Under these circumstances, the class has standing only if the certification of the class is found to "relate back" to the filing of the original complaint.[17] Although the trial judge might have certified the class earlier in the proceedings, the emergency nature of the claims is such that they might well have been moot prior to certification. Accordingly, application of the relation-back doctrine is proper here. Thus, not only was there a controversy between at least one plaintiff and the defendants at the time the class action was certified, but the certification of the class also related back to the time of the complaint.
 
 
 18
 (3) Nothing has been brought to our attention that would indicate that there is no longer any controversy between members of the plaintiff class and the defendants.[18]
 
 
 19
 Because the Sosna test was met in the case before us, we conclude that there was at least one plaintiff with standing when the complaint was filed and when the class was certified, and that we may review the case in its present posture. We thus move to the merits.
 
 C.
 
 20
 The defendants make two claims concerning the merits: that Congress did not intend that emergency assistance be made available to recipients of aid to families with dependent children (AFDC), and that the Commonwealth may, in any event, choose to provide emergency assistance to victims of certain emergency situations but not of others. We decline to adopt either contention.
 
 
 21
 Our understanding of the statutory scheme established by Congress when it created the emergency assistance program leads us to the conclusion that AFDC recipients are eligible to receive emergency assistance payments. There are two independent bases for this result. First, the two statutory subsections establishing the emergency assistance program denominate it "emergency assistance to needy families with children."[19] The phrase "needy families with children" is a critical one, since in another section of the Act, that same phrase describes which families are eligible to receive AFDC payments at all.[20] It is unlikely that Congress would have used the same words in creating the emergency assistance program if it had not intended that emergency assistance be available, at the least, to those families currently receiving AFDC payments.
 
 
 22
 The conclusion derived from the particular language used in the statute is reinforced by the legislative history, scanty as it might be. The most telling portion of that history is an observation contained in the Report prepared by the Senate Finance Committee. Families eligible to receive emergency assistance, the authors of the Report wrote, "do not have to be receiving, or eligible upon application to receive, AFDC . . . ."[21] The inference is that families may receive AFDC without losing their eligibility for emergency assistance payments.[22]
 
 
 23
 Finally, we proceed to the issue that lies at the core of this litigation: whether, consistently with the Act, Pennsylvania may limit emergency assistance payments to victims of two specific kinds of emergencies those caused by civil disorder or natural disaster and exclude from eligibility persons whose emergency situations arise from any other cause. The plaintiffs argue that the eligibility criteria contained in section 406(e) of the Social Security Act must be used by each state that adopts an emergency assistance program. In establishing narrower eligibility standards by restricting the assistance payments to emergencies caused by two specific types of occurrences only, the plaintiffs maintain, Pennsylvania has failed to implement the kind of program that Congress insisted that the states adopt if they are to receive federal financial aid. The defendants disagree, asserting that section 406(e) simply defines the outer boundaries of that set of families who may receive emergency assistance under a state plan. A narrower eligibility standard may be adopted if the state so chooses, continues the argument, and that is what Pennsylvania has done.
 
 
 24
 Agreeing with the contention of the plaintiffs, the district court placed great reliance upon the decisions of the Supreme Court in Townsend v. Swank[23] and its progeny,[24] where it has repeatedly been held that the states may not exclude from eligibility for AFDC payments any persons who are eligible under the standards established in the Social Security Act. In this Court, plaintiffs also argue that that line of cases controls in the emergency assistance field.
 
 
 25
 In each of those cases, the holding was bottomed upon the mandatory language in section 402(a)(10) of the Social Security Act.[25] That section requires that "aid to families with dependent children" the AFDC payments defined in section 406(b) of the Act[26] be paid "to all eligible individuals . . . ."[27] But there is no parallel requirement in the statute that emergency assistance whose definition and funding provisions are entirely separate from those of AFDC[28] be paid to all eligible individuals. We therefore may not conclude that Townsend and the cases following it, by themselves, require a holding that Pennsylvania must provide emergency assistance to all persons facing an emergency, regardless of its cause. Such a broad-based eligibility standard does not appear to have been imposed upon the states expressly by the statutory amendments creating the emergency assistance program.
 
 
 26
 Nonetheless, we understand the language employed by Congress in enacting the emergency assistance program to mean that Congress did not intend to give the states the right to limit the eligibility standard. The emergency assistance sections of the Social Security Act specifically preserve three areas of discretion for the states: the amount of time during which the aid will be available, the kinds of aid to provide, and whether to include in the program migrant workers with families.[29] Congress thus made it clear that it wanted certain aspects of the emergency assistance program left in the hands of the states. But Congress set forth in the legislation no such express authorization giving the states the power to create a limitation on which emergencies shall trigger the right to receive emergency assistance. The absence of such authorization, coupled with its presence elsewhere in the same section of the Act, indicates that Congress intended that the states not be allowed to impose eligibility standards more confining than those contained in the federal statute.[30]
 
 
 27
 Further nourishment in support of this interpretation is drawn from the recent decision of the Seventh Circuit in Mandley v. Trainor,[31] where the Illinois emergency assistance program was invalidated on the ground of a challenge identical to that presently before us namely, that it violated the Act because it permitted the payment of emergency assistance to deal with emergencies resulting from certain causes, but not from others. The question there, as here, was "whether Congress intended to allow the states to apply eligibility criteria that are narrower than those set out" in section 406(e) of the Act.[32] The Seventh Circuit observed that "the legislative history is not conclusive of Congress' intent, (but) it does show that there is no specific indication that Congress intended the states to be able to narrow the eligibility criteria . . . ."[33]
 
 
 28
 The history further demonstrates that "Congress was much concerned with the emergency needs of all children approaching destitution," and that Congress had "great concern for those families with children who are in need of emergency aid."[34] Such concerns are consistent with an interpretation of the statute that would not allow the states to constrict the scope of eligibility for emergency assistance.
 
 
 29
 Further elucidation of the meaning of the Act may be gleaned from the regulations promulgated by the Department of Health, Education, and Welfare. "In interpreting (the Social Security Act), we must be mindful that 'the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . .' "[35] The HEW regulation stipulates that a state plan that includes an emergency assistance program "may . . . (p)rovide more limited public assistance coverage than that provided by the Act only where the Social Security Act or its legislative history authorizes more limited coverage . . . ."[36] As noted, neither the Act nor its legislative history authorizes more limited coverage. The regulation, therefore, would also appear to require a broader program than Pennsylvania has established.[37]
 
 
 30
 We thus conclude that the emergency assistance plan established by the Commonwealth of Pennsylvania, by confining the right to receive such assistance to those persons whose emergencies were caused by civil disorder or natural disaster, is not congruent with the Social Security Act. As such, it is invalid under the supremacy clause of the Constitution.[38]
 
 
 31
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Act of Jan. 2, 1968, Pub.L. No. 90-248, §§ 206(a), 206(b), 81 Stat. 893 (codified in Social Security Act §§ 403(a)(5), 406(e), 42 U.S.C.A. §§ 603(a) (5), 606(e) (1970)). Although finally enacted early in 1968, the amendments are known as the Social Security Amendments of 1967. 81 Stat. 821
 
 
 [2]
 Social Security Act § 406(e)(1), 42 U.S.C. § 606(e)(1) (1970)
 
 
 [3]
 Thus, § 402(a) of the Act, 42 U.S.C. § 602(a) (1970), which lists the items that must be included in a state plan, does not include any reference to the emergency assistance program. However, if a state chooses to implement the program, its state plan, see id., must "include provision for such assistance." Id. § 406(e)(1), 42 U.S.C. § 606(e)(1) (1970)
 
 
 [4]
 Id. § 403(a)(5), 42 U.S.C. § 603(a)(5) (1970)
 
 
 [5]
 Pennsylvania Department of Public Welfare, Pennsylvania Manual § 6170, appendix III
 
 
 [6]
 Pennsylvania Department of Public Welfare, Public Assistance Memorandum No. 1209
 
 
 [7]
 Although the complaint included a constitutional challenge to a state regulation and sought injunctive relief, which by itself would require the convening of a district court of three judges, see 28 U.S.C. § 2281 (1970), the single district judge properly addressed the pendent supremacy clause claim. Hagans v. Lavine, 415 U.S. 528, 543-45, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)
 
 
 [8]
 See Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965)
 
 
 [9]
 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)
 
 
 [10]
 Id. at 536, 94 S.Ct. at 1378. See also Burns v. Alcala, 420 U.S. 575, 577 n. 1, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975)
 
 
 [11]
 415 U.S. at 537, 94 S.Ct. 1372
 
 
 [12]
 Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970)
 
 
 [13]
 Hagans v. Lavine, 415 U.S. 528, 539, 94 S.Ct. 1372, 1380, 39 L.Ed.2d 577 (1974) (quoting Dandridge v. Williams, 397 U.S. 577, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970))
 
 
 [14]
 In fact, one court has invalidated a similar state program on constitutional grounds. Burrell v. Norton, 381 F.Supp. 339 (D.Conn.1974)
 The defendants also argued in their brief that jurisdiction over this case was not conferred by 28 U.S.C. § 1331. In view of our conclusion that jurisdiction exists under § 1343(3), we need not address that point.
 
 
 [15]
 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)
 
 
 [16]
 Id. at 402, 95 S.Ct. at 559 (footnotes omitted)
 
 
 [17]
 Id. n. 11
 
 
 [18]
 In view of our conclusions regarding the individuals who were permitted to intervene as plaintiffs, we need not decide whether a controversy may exist, in the circumstances here, between the defendants and the institutional plaintiff, the Philadelphia Welfare Rights Organization. See National League of Cities v. Usery, --- U.S. ----, ----, 96 S.Ct. 2465, 49 L.Ed.2d 245, n. 7 (1976); California Bankers Ass'n v. Shultz, 416 U.S. 21, 44-45, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); cf. United States v. SCRAP, 412 U.S. 669, 683-90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)
 
 
 [19]
 Social Security Act §§ 403(a)(5), 406(e)(1), 42 U.S.C. §§ 603(a)(5), 606(e)(1) (1970)
 
 
 [20]
 Thus, § 402(a) of the Act, 42 U.S.C. § 602(a) (1970), describes at great length the items that must be included in a state plan for providing "aid and services to needy families with children . . . ."
 
 
 [21]
 S.Rep. No. 744, 90th Cong., 1st Sess. (1967) (reprinted in 1967 U.S.Code Cong. & Admin.News, pp. 2834, 3003)
 
 
 [22]
 Our conclusion in this regard is buttressed by the fact that Pennsylvania's current plan provides that emergency assistance payments shall be made to current recipients of public assistance, to persons eligible for, but not receiving, public assistance, and to persons not eligible for public assistance. Pennsylvania Department of Public Welfare, Pennsylvania Manual § 6170, appendix III, at 2. In its brief filed in this Court, the Commonwealth stated that it "provides emergency assistance both to AFDC and non-AFDC families in times of civil disorder and natural disaster." Appellant's brief at 59
 
 
 [23]
 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971)
 
 
 [24]
 Philbrook v. Glodgett, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); Van Lare v. Hurley, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); Burns v. Alcala, 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975); Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974); Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972). The holding in Townsend was grounded in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968)
 
 
 [25]
 42 U.S.C. § 602(a)(10) (Supp. IV, 1974)
 
 
 [26]
 42 U.S.C. § 606(b) (1970)
 
 
 [27]
 The reliance placed upon § 402(a)(10) in the Supreme Court decisions was expressly recognized most recently in Burns v. Alcala, 420 U.S. 575, 578, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975). See also New York Dep't of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973) (stating that in King and Townsend, "it was clear that state law excluded people from AFDC benefits who the Social Security Act expressly provided would be eligible."); Doe v. Beal, 523 F.2d 611, 615 (3d Cir. 1975), cert. granted, --- U.S. ----, 96 S.Ct. 3220, 49 L.Ed.2d. ---- (1976); Murrow v. Clifford, 502 F.2d 1066, 1068 n. 2 (3d Cir. 1974)
 
 
 [28]
 Compare Social Security Act §§ 403(a)(5), 406(e), 42 U.S.C. §§ 603(a)(5), 606(e) (1970) (emergency assistance), with id. §§ 403(a)(1, 2), 406(b), 42 U.S.C. §§ 603(a)(1, 2), 606(b) (1970) (AFDC)
 
 
 [29]
 The states were given the right to choose to furnish the assistance for any period "not in excess of 30 days in any 12-month period. . . ." Congress also allowed the states to determine whether to provide money, payments in kind, other payments, medical care, or other remedial care to persons in need of emergency assistance. It further gave the states the option to include or to exclude migrant workers with families from the plan; if they are included, each state has the further power to determine whether to limit that portion of the program to particular sections of the state. Social Security Act §§ 406(e)(1), 406(e)(1)(A), 406(e)(2), 42 U.S.C. §§ 606(e)(1), 606(e)(1)(A), 606(e)(2) (1970)
 
 
 [30]
 Guidance in this regard is given by the maxim "inclusio unius est exclusio alterius," which informs a court to exclude from operation those items not included in a list of elements that are given effect expressly by the statutory language. Section 406(e) "is as significant for what it omits as for what it says." Moskowitz v. Marrow, 251 N.Y. 380, 397, 167 N.E. 506, 511 (1929) (Cardozo, C. J., concurring)
 Our construction of the Act also appears appropriate in view of the doctrine favoring interpretation of statutes in a fashion that avoids the necessity of reaching constitutional questions. Townsend v. Swank, 404 U.S. 282, 291, 92 S.Ct. 502, 30 L.Ed.2d 448 (1972). A contrary construction would require us to remand the case to the district court for a subsequent convening of a three-judge district court, 28 U.S.C. § 2281, and a resolution of the constitutional challenges posed in the complaint.
 
 
 [31]
 523 F.2d 415 (7th Cir. 1975)
 
 
 [32]
 Id. at 420
 
 
 [33]
 Id. at 421
 
 
 [34]
 Id
 
 
 [35]
 New York State Dep't of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973) (quoting Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), and Dandridge v. Williams, 397 U.S. 471, 481-82, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970))
 
 
 [36]
 45 C.F.R. § 233.10(a)(ii)(A) (1975). Cf. Mandley v. Trainor, 523 F.2d 415, 421-22 (7th Cir. 1975)
 
 
 [37]
 We do not, of course, require that Pennsylvania continue to accept federal funds for an emergency assistance program. But if such funds are used, the guidelines established by Congress must be followed
 The ruling of the Court today is in no way a reflection on the advisability of the Pennsylvania arrangement. "The wisdom or fairness of the (program, we) make no attempt to vindicate. Our duty is done when we enforce the law as it is written." Techt v. Hughes, 229 N.Y. 222, 228-29, 128 N.E. 185, 186, cert. denied, 254 U.S. 643, 41 S.Ct. 14, 65 L.Ed. 454 (1920). See National League of Cities v. Usery, --- U.S. ----, ----, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (Stevens, J., dissenting).
 
 
 [38]
 This does not mean that the states may not appropriately define which situations constitute emergencies and which do not. We simply hold that the states may not restrict the payment of emergency assistance to those persons whose emergencies arise out of particular causes