**DEGREGORIO et al.**

v.

**O'BANNON et al.**

**Civ. A. No. 75–2033.**

United States District Court,
E. D. Pennsylvania.

Feb. 19, 1980.

Stephen F. Gold, Richard J. Gold, Philadelphia, Pa., for plaintiffs.

Robert B. Hoffman, Harrisburg, Pa., for Commonwealth defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This suit was filed as a class action in 1975 by Daniel B. Degregorio and the Philadelphia Welfare Rights Organization against various persons and agencies entrusted with administering the Pennsylvania Medical Assistance Program and against various private nursing homes and their directors. The suit alleges that persons in Pennsylvania eligible for medical assistance and determined to be in need of skilled nursing facility care are being systematically excluded from skilled nursing facilities because of the low level of reimbursement for such care by the state and that this is in violation of federal statutory and constitutional law.

This opinion first addresses the Commonwealth defendants' motion partially to reconsider the orders of May 1, 1978 by Judge Fogel, to whom this case was previously assigned. Specifically, the Commonwealth asks me to reconsider Judge Fogel's conclusions that: (1) plaintiff Degregorio's claim was not moot, and (2) therefore a plaintiff class should be certified consisting of:

all Pennsylvania citizens who are applicants for and recipients of medical assistance and who have been or will be determined eligible for skilled nursing facility care under the Pennsylvania Medical Assistance Program, but who have been or will be unable to obtain a bed in a skilled nursing facility participating in the . . Program;

and (3) the Philadelphia County Board of Assistance should not be dismissed from these proceedings as a party defendant. The Commonwealth also objected, in oral argument on this motion and in a supplemental memorandum, to the attempted dismissal of the defendant nursing homes by stipulation between some of the parties; this opinion will also consider that objection.

I.

That part of defendants' motion that challenges the certification of the class described above, with Degregorio as its sole named representative, requires me to summarize the complex litigative scenario that Judge Fogel confronted when he issued his orders of May 1, 1978.

Plaintiff Degregorio was, at the time the suit was filed, in July of 1975, eligible to receive medical assistance, and he had been determined by the state to be medically and financially eligible for skilled nursing home care. Complaint at ¶ 27. In July, 1976, however, Degregorio's eligibility for skilled nursing facility care under the Pennsylvania Medical Assistance Program expired, apparently because he had failed to renew it. Commonwealth Defendants' Motion for Partial Reconsideration 4 (October 23, 1978).

Prior to this date, on January 19, 1976, Pearl Gouedy, another person eligible for such care, but unable to obtain a bed in almost all of the scores of skilled nursing facilities to which she had applied, moved to intervene through her son, Von Gouedy, as guardian ad litem.[1] On February 24, 1976,

1. In her complaint, Pearl Gouedy acknowledged that at least two skilled nursing facilities were prepared to accept her. Complaint of Intervening Plaintiff (Pearl Gouedy) at ¶¶ 16,

17. One of these was determined by her son to be "too poor for it to be a suitable place to put his mother." Id. at ¶ 16.

however, before Judge Fogel could rule on this motion, Pearl Gouedy drowned in her bathtub.

Roughly one-and-one-half-years later, on June 20, 1977, a second person, Harry Kleinman, moved to intervene through his daughter Frances Jacobs, as guardian ad litem. Unlike Degregorio and Gouedy, Kleinman had been admitted to a skilled nursing facility before he had become eligible for medical assistance. His allegation was that the skilled nursing facility in which he resided had refused to convert him from private to public status. Complaint of Intervening Plaintiff (Harry Kleinman). By March 7, 1978, before Judge Fogel had ruled on his motion for intervention, Kleinman entered into a stipulation with the skilled nursing facility agreeing to drop his claims for damages in return for his retention there as a medical assistance patient.

Finally, mention should be made of the claim by the Philadelphia Welfare Rights Organization that a number of persons, eligible for medical assistance and skilled nursing facility care but denied admission, had sought assistance from that Organization and were, therefore, members of the Philadelphia Welfare Rights Organization by virtue of that request for help. Plaintiffs' Reply Memorandum in Further Support of their Motion for Determination of a Class Action at 6 n.4 (March 25, 1977). Included among these were Pearl Gouedy, John Lowris and "five unidentified members whose case records have not been found." Id. 5 n.3. John Lowris, along with one of the unidentified "members," found placement in a skilled nursing facility other than that where they were residing as private patients. Id. 7. Another of the unidentified "members" died before class certification was ruled on. Id. 5 n.3.

Given this complex set of facts, Judge Fogel did not rule on the motions to intervene, decided that the Philadelphia Welfare Rights Organization had no standing since the membership status of Gouedy and Lowris was not adequately demonstrated, and concluded that Degregorio had standing,

despite the lapse of eligibility. Order of May 1, 1978 (filed May 3, 1978). He then proceeded to certify the class described above. Order of May 1, 1978 (filed May 4, 1978).

With this as predicate, I now turn to the legal issues posed by the Commonwealth defendants' current challenge to the class certified by Judge Fogel in May of 1978. Defendants insist that plaintiff Degregorio's failure to take the necessary steps to extend his eligibility for nursing home care beyond July of 1976 had the additional consequence of mooting his own plaintiff status and, so the argument runs, vitiating the class certification decreed by Judge Fogel almost two years after Degregorio's lapse of eligibility, thus requiring dismissal of the entire litigation. Degregorio says that while a termination of his eligibility for nursing home care one year after the commencement of this litigation may arguably have operated to take him out of the subclass of those who "will be determined eligible" and "will be unable to obtain a bed," it did not take him out of the sub-class of those who "have been . . . eligible" and "have been . . . unable to obtain a bed," and thus he was and is a member of the class as certified. Wherefore, so Degregorio argues, he is still actively engaged in genuinely adversary litigation on behalf of a class he is qualified to champion. Alternatively, Degregorio argues that Judge Fogel's certification was correct since even if Degregorio's 1975 claim became moot in 1976, the injury Degregorio complained of was "capable of repetition, yet evading review" and thus the certification could be said to relate back to the time of the filing of his complaint. Finally, Degregorio argues that even if it be concluded that he no longer has a viable personal stake in this litigation—if, for example, his claim be deemed so vestigial and retrospective as not to support a class action principally oriented towards fashioning a decree which would revise governmental and nursing home practice in the future—the class action which bears his name has in fact and in law

continued in full vigor notwithstanding his own unwitting defection from the class almost two years before it was certified. So, Degregorio contends, the case should not be dismissed as moot. He does, however, propose that the class be rejuvenated by allowing Harry Kleinman to intervene *nunc pro tunc* as of May 1, 1978. Plaintiffs' Supplemental Memorandum of Law regarding Class Certification, filed November 5, 1979, at pp. 8–10.

In advancing these arguments, plaintiff[2] relies heavily upon the fact that defendants made this very plea of mootness to Judge Fogel, who resolved the issue in Degregorio's favor on May 1, 1978, in an Order concurrent with his Order of the same date certifying the class. I suppose a plausible argument can be made for the proposition that Judge Fogel's ruling is, in effect, "law of the case" for this litigation, thus foreclosing in this court defendants' renewed demand for dismissal of this litigation on mootness grounds. But at least in some circumstances, the rulings of a judge no longer sitting are open to reconsideration by the judge upon whom responsibility for the case has devolved. *TCF Film Corp. v. Gourley*, 240 F.2d 711, 713–14 (3d Cir. 1957) (*en banc*); *United States Gypsum Co. v. Schiavo Brothers, Inc.*, 485 F.Supp. 46 (E.D.Pa., 1980). And it would appear that discretion to reconsider merges into obligation to reconsider where, as here, the prior ruling goes to the question whether there is a live controversy before the court, thus putting in issue the authority of the court to proceed. So I am persuaded that defendants' motion is one which must be entertained.

Judge Fogel explained his rejection of the mootness claim by citing *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). *Gerstein v. Pugh* involved a suit by pre-trial detainees alleging that the procedural protections provided them were defective. In that case, the Supreme Court observed that it was not clear whether any of the named plaintiffs were still in custody at the time the class had been certified, but determined that the case was nevertheless not moot because the wrongs alleged in the complaint were of the sort which are "capable of repetition, yet evading review." 420 U.S. at 111 n.11, 95 S.Ct. at 861 n.11.

The rationale of *Gerstein*, under which class certification was allowed to "relate back" to the claims that the original named plaintiffs possessed at the time of the filing of the complaint, has been applied by a number of courts of appeals in circumstances analogous to those present in *Gerstein* —i. e., circumstances in which the litigation calendar might easily be more protracted than the term of an original named plaintiff's injury: See *Geraghty v. United States Parole Commission*, 579 F.2d 238, 248–52 (3d Cir. 1978), *cert. granted* 440 U.S. 945, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979); *Roper v. Consurve*, 578 F.2d 1106 (5th Cir. 1978), *cert. granted sub nom. Deposit Guaranty National Bank v. Roper*, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979); *Williams v. Wohlgemuth*, 540 F.2d 163 (3d Cir. 1976); *Basel v. Knebel*, 179 U.S.App.D.C. 209, 211, 551 F.2d 395, 397 (D.C.Cir.1977); *Zurak v. Regan*, 550 F.2d 86 (2d Cir. 1977), *cert. denied* 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); *Blankenship v. HEW*, 587 F.2d 329, 332 (6th Cir. 1978); *Wright v. Califano*, 587 F.2d 345, 350 (7th Cir. 1978); *White v. Mathews*, 559 F.2d 852, 857 (2d Cir. 1977) *cert. denied* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500. *See also, Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 2705 n.11, 57 L.Ed.2d 705 (1978). But in all of these cases, the hazard of potential mootness had been generated by circumstances beyond the control of the plaintiffs, and, in several cases, by circumstances over which the defendants did have control. By contrast, Degregorio's eligibility appears to have lapsed precisely because of the one circumstance over which he had control. Accordingly, defendants argue, this case lacks the indicia of those the Supreme Court is solicitous of preserving under the rubric of "capable of repetition, yet evading review." To avoid the force of this distinction, plaintiff argues that his eligibility

---

**2.** Hereinafter, "plaintiff" will signify Degregorio and/or the plaintiff class.

lapsed not because of his inaction but because of defendants' action in adopting a rule requiring annual renewal of one's eligibility for skilled nursing care, a further barrier to the benefits Degregorio and his class seek.

█ Were I to conclude that Degregorio had no cognizable stake in this litigation after the lapse of his eligibility in July of 1976, the question would then arise whether Judge Fogel's subsequent Order certifying the class should now be regarded as, in some sense, void *ab initio*, or whether there are devices by which it could be salvaged. But there is no need to reach this question. Even if Degregorio's asserted injury is not perceived as one "capable of repetition, yet evading review," it does not follow that his own stake in this litigation is moot or that Degregorio is not an appropriate standard-bearer for the class certified by Judge Fogel.

With respect to Degregorio's own personal stake in this litigation, it first should be noted that his loss of eligibility for skilled nursing care, in July of 1976, does not mean that Degregorio did not fall within the terms of the class as defined by Judge Fogel; for that class includes "all Pennsylvania citizens . . . who have been . . . determined eligible for skilled nursing facility care . . . but who have been . . . unable to obtain a bed in a skilled nursing facility . . . ." Even if it be assumed *arguendo* that Degregorio has no present stake in the benefits flowing from a decree looking to the future, his damage claim for past wrongs makes him an appropriate named plaintiff on behalf of a class which has interests inclusive of but broader than his own. This is the clear teaching of Judge Rosenn's opinion for our Court of Appeals in *Wetzel v. Liberty Mutual Insurance Company*:

> Liberty Mutual contends that employees, such as Wetzel and Ross, who have voluntarily severed their employment prior to suit cannot adequately represent members of the class who are presently employed by the company.

   *    *    *    *    *    *

We believe that a former employee, who is not entitled to reinstatement, may still be an adequate representative of a class of past and present employees alleging discriminatory employment practices.

508 F.2d 239–247 (3d Cir. 1975), *cert. den.* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679. Moreover, it has not been suggested that anything precludes Degregorio from reacquiring eligibility in the future—in which event he would presumably fall within that portion of the class who "will be determined eligible for skilled nursing facility care . . . but who . . . will be unable to obtain a bed . . . ," and would thus appear to have reacquired a personal stake in prospective relief.

Therefore, I am satisfied both that this case is not moot as to Degregorio and that he is a proper member and champion of the proper class certified by Judge Fogel. Even if I entertained a very different view of Degregorio's status—namely, that he has no personal stake in this litigation, and has had none since his eligibility lapsed in July of 1976—I would not conclude that the class action certified by Judge Fogel should be discontinued. There is, to be sure, authority for the proposition that "an improperly or non-certified class cannot succeed to the adversary position formerly occupied by a no-longer-aggrieved representative plaintiff whose own claim has become moot." *Vun Cannon v. Breed*, 565 F.2d 1096, 1098 (9th Cir. 1977). If that is an inexorably correct statement of the law, it means that a class action must fail simply because a district judge delays in entering an otherwise proper class certification order until after a named plaintiff loses claimant status (as DeGregorio arguably did) or until after a would-be plaintiff-intervenor dies (as Gouedy did). Just why this draconian consequence must flow from a dilatory adjudication is not self-evident. Certainly nothing in "cases and controversies" doctrine mandates that at every stage of a class action there be a named plaintiff with a cognizable present claim. So much was made clear by Mr. Justice Brennan, speaking for the Court, in *Franks v. Bowman Transportation*

*Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). There he had occasion to address the contention that a class action vigorously litigated below had become moot on reaching the Supreme Court, for the reason that the claim of the named plaintiff had been found lacking on the merits in the lower courts. Respondent argued that the adjudication adverse to plaintiff's claim deprived him of a stake in the litigation and therefore—because the injuries alleged did not fall into the small category of those "capable of repetition, yet evading review" —rendered the class action launched by plaintiff moot as well. Respondent's argument placed heavy reliance on the Court's decisions in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) and *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975). Mr. Justice Brennan addressed respondent's contention in some detail. 424 U.S. 752–756, 96 S.Ct. 1258–1260 (1975) (footnotes omitted).

> Bowman argues that since Lee will not in any event be eligible for any hiring relief in favor of OTR nonemployee discriminatees, he has no personal stake in the outcome and therefore the question whether nonemployee discriminatees are entitled to an award of seniority when hired in compliance with the District Court order is moot. Bowman relies on *Sosna v. Iowa*, 419 U.S. 393 [, 95 S.Ct. 553, 42 L.Ed.2d 532] (1975), and *Board of School Comm'rs v. Jacobs*, 420 U.S. 128 [, 95 S.Ct. 848, 43 L.Ed.2d 74] (1975). That reliance is misplaced.

> \*    \*    \*    \*    \*    \*

> It is true as Bowman emphasizes that *Sosna* was an instance of the "capable of repetition, yet evading review" aspect of the law of mootness. *Id.* [, 419 U.S.] at 399–401 [, 95 S.Ct. 553, at 557, 42 L.Ed.2d, at 540]. And that aspect of *Sosna* was remarked in *Board of School Comm'rs v. Jacobs, supra*, a case which was held to be moot. But nothing in our *Sosna* or *Board of School Comm'rs* opinions holds or even intimates that the fact that the named plaintiff no longer has a personal stake in

the outcome of a certified class action renders the class action moot unless there remains an issue "capable of repetition, yet evading review." Insofar as the concept of mootness defines constitutionally minimal conditions for the invocation of federal judicial power, its meaning and scope, as with all concepts of justiciability, must be derived from the fundamental policies informing the "cases or controversies" limitation imposed by Art. III.

> "As is so often the situation in constitutional adjudication, those two words have an iceberg quality, containing beneath their surface simplicity submerged complexities which go to the very heart of our constitutional form of government. Embodied in the words 'cases' and 'controversies' are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." *Flast v. Cohen*, 392 U.S. 83, 94–95 [, 88 S.Ct. 1942, 1949–1950, 20 L.Ed.2d 947, 958–959] (1968).

There can be no question that this certified class action "clearly presents" the District Court and the Court of Appeals "with a case or controversy in every sense contemplated by Art. III of the Constitution." *Sosna, supra*, [419 U.S.] at 398, 95 S.Ct. 553, at 557, 42 L.Ed.2d, at 540. Given a properly certified class action, *Sosna* contemplates that mootness turns on whether, in the specific circumstances of the given case at the time it is before this Court, an adversary relationship sufficient to fulfill this function exists.

See also, *Developments in the Law—Class Actions*, 89 *Harv.L.Rev.* 1318, 1463–70 (1976).

Given the refreshing realism of *Franks v. Bowman*, it is hard to summon up cogent reasons for concluding that a case vigorously litigated by able counsel should be derailed at a late stage because, with the benefit of hindsight, the original named plaintiff is held to have lost a cognizable personal claim prior to the entry of the order certifying the plaintiff class. Professor Moore's discussion of the matter shows that some courts have indeed found ways to prevent the threat of mootness from sacrificing healthy class actions on the altar of formalism.

> [A] recurring problem which has arisen out of the standing requirement is whether the mooting of the individual plaintiff's claim prior to the point at which the court acts to certify the class under Rule 23(c)(1), moots the class claim. . . . A practical compromise has been to dismiss the individual claim of the named plaintiff and to deny his status as the class representative, but to retain the class claim for a specified period of time to allow intervention by a plaintiff with standing and a non-moot claim. But even this compromise procedure was rejected in some earlier decisions on the ground that a case or controversy with respect to the class could not exist in absence of a continuing representative member having standing and a non-moot claim. In other cases, though, the plaintiff either was allowed to continue as class representative or the compromise was accepted, at least where the court had acted to certify the class before the mooting of the individual claim, and even in some cases where, although the class had not yet been certified, the nature of the action "per force" of law was a class action.

*3B Moore's Federal Practice*, pages 23–128 to 23–131. (Footnotes omitted.)

In the present case, the devices explored by Professor Moore need not be pursued, for the reason that Degregorio is a class member with a continuing stake in the litigation. This litigation has been conducted on behalf of a clearly defined class of persons whose interest in it is in no way impaired by Degregorio's lapse in eligibility. And the class claims are being pressed, and countered, with enterprise and intelligence by able counsel, with the result that the entire range of important issues framed by the pleadings is being subjected to vigorous scrutiny.

Nevertheless, I think the adversary process would benefit if there were, in addition to Degregorio, other identified members of the class; their claims of actual deprivation might illuminate the further phases of this litigation, particularly insofar as they give concreteness to the prayers for prospective relief. For this reason, I find particularly timely the recently filed motions of Wilhemina Schaffer, Charles Katz and Mattie Lonser, by their guardians ad litem, to intervene as parties plaintiff and class representatives.[3] These motions are opposed by the Commonwealth defendants on the grounds (1) that the would-be intervenors' complaints raise questions of law and fact different from those raised by the central complaint, and (2) that "intervention will not be permitted to breathe life into a 'non-existent' lawsuit." *McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir. 1979), quoting *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965). I do not find the alleged differences between intervenors' complaints and that of Degregorio to be significant. Furthermore, the preceding discussion should make clear that the present lawsuit is far from non-existent in the absence of these movants. As I have said, Degregorio satisfies the cases or controversies requirement, and I am prepared to entertain the motion to intervene only as offering a welcome supplement to an already viable lawsuit.[4] I

---

3. The Commonwealth defendants filed a detailed response to the first of these motions, that of Ms. Schaffer, and, in response to those of Ms. Lonser and Mr. Katz, requested that the detailed response be deemed to apply to them as well.

4. Although the viability of this lawsuit does not depend upon the intervention of Schaffer, Lonser and Katz, the case law relied upon by defense counsel would hardly spell the death of this controversy were Degregorio's claim as weak as the defendants suggest. As the Third

find that all of the would-be intervenors' complaints do possess questions of law and fact in common with those of Degregorio and will grant the motions to intervene. Accordingly, I will allow thirty days from the filing of the accompanying order for discovery to be conducted as to intervenors' suitability as class representatives.

## II.

The Commonwealth defendants also ask me to reconsider Judge Fogel's refusal to dismiss the Philadelphia County Board of Assistance from the case. The Commonwealth argues that the County Board is an arm of the state, and hence shares the immunity from federal court process conferred by the Eleventh Amendment. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). The plaintiff argues and Judge Fogel concluded that the County Board is not an arm of the state for purposes of sovereign immunity. Here again, since the issue goes to the court's jurisdiction, I feel obliged to reconsider Judge Fogel's conclusion.

*Mt. Healthy City School District/Board of Education v. Doyle* involved a claim asserted by a discharged teacher against his former employer, the school district. Although the Court determined in that case that the school district was not an arm of the state, and therefore not immune, its discussion is instructive:

The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, *Edelman v. Jordan*, 415 U.S. 651 [, 94 S.Ct. 1347, 39 L.Ed.2d 662] (1974);

*Ford Motor Co. v. Dept. of Treasury*, [323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389] *supra*, but does not extend to counties and similar municipal corporations. See *Lincoln County v. Luning*, 133 U.S. 529, 530 [, 10 S.Ct. 363, 33 L.Ed. 766] (1890); *Moor v. County of Alameda*, 411 U.S. 693, 717–721 [, 93 S.Ct. 1785, 1799–1801, 36 L.Ed.2d 596] (1973). The issue here thus turns on whether the Mt. Healthy Board of Education is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. The answer depends, at least in part, upon the nature of the entity created by state law. Under Ohio law the "State" does not include "political subdivisions," and "political subdivisions" do include local school districts. Ohio Rev.Code Ann. § 2743.01 (Page Supp.1975). Petitioner is but one of many local school boards within the State of Ohio. It is subject to some guidance from the State Board of Education, Ohio Rev.Code Ann. § 3301.07 (Page 1972 and Supp.1975), and receives a significant amount of money from the State. Ohio Rev.Code Ann. § 3317 (Page 1972 and Supp.1975). But local school boards have extensive powers to issue bonds, Ohio Rev.Code Ann. § 133.27 (Page 1969), and to levy taxes within certain restrictions of state law. Ohio Rev.Code Ann. §§ 5705.02, 5705.03, 5705.192, 5705.194 (Page 1973 and Supp.1975). On balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State. We therefore hold that it

Circuit suggested in *Fuller v. Volk*, 351 F.2d 323 (3d Cir. 1965):

However, a court has discretion to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor. *Hackner v. Guaranty Trust Co.*, 117 F.2d 95 (2d Cir.), *cert. denied*, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941) . . . .

\* \* \* \* \* \*

This discretionary procedure is properly utilized in a case in which it appears that the intervenor has a separate and independent

basis for jurisdiction and in which failure to adjudicate the claim will result only in unnecessary delay. By allowing the suit to continue with respect to the intervening party, the court can avoid the senseless "delay and expense of a new suit, which at long last will merely bring the parties to the point where they now are." *Hackner v. Guaranty Trust Co., supra*, 117 F.2d at 98.

*Id.* at 328–29 (additional citations omitted). See also *McKay, et al. v. Heyison*, 614 F.2d 899, at pp. 906–908 (3d Cir. 1980).

was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts.

429 U.S. at 280–81, 97 S.Ct. at 572–573.

The statute creating and defining Pennsylvania's County Boards of Assistance is 62 P.S. §§ 415–424. These provisions do not give the County Boards anything approximating the independent authority which Ohio has conferred on its school districts. They cannot, for example, issue bonds or levy taxes. And there appears to be no Pennsylvania statute, analogous to the Ohio statutes relied upon in *Mt. Healthy*, which removes County Boards from the definition of "state." *Bogucki v. Eells*, 67 Pa.D.&C.2d 275 (C.C.P.1974) seems to be the only Pennsylvania case on the suability of County Boards; there, the court concluded that a County Board "is an agency of the Commonwealth" and therefore shares the state's immunity from suit without its consent. *Id.* 277. This conclusion also seems consistent with the approach taken by the Pennsylvania Supreme Court in distinguishing between the Commonwealth and its subdivisions for sovereign immunity purposes. Having abolished immunity for governmental units other than the Commonwealth itself, *Ayala v. Philadelphia Board of Education*, 453 Pa. 584, 305 A.2d 877 (1973), the state high court was required to reexamine earlier decisions which had held state governmental entities to be immune, in order to identify those entities not immune because not integral components of the Commonwealth. Thus, in *Specter v. Commonwealth*, 462 Pa. 474, 341 A.2d 481 (1975), and *Yancoskie v. Delaware River Port Authority*, 478 Pa. 396, 387 A.2d 41 (1978), it was held that the Turnpike Commission and the Port Authority respectively were no longer entitled to immunity. In these cases, the state court relied, in "critical" part, upon the financial independence of the two entities. "The Authority, like the Commission, raises revenue by means of bonds and satisfies these obligations by toll and other user charges. Moreover, and again like the Commission, the Authority's debts are not Commonwealth obligations." *Yancoskie*, 387 A.2d at 44. As I have already pointed out, the County Boards of Assistance possess no such financial independence. The State Department of Public Welfare pays their administrative expenses. 62 P.S. § 406. Moreover, County Boards are composed of men and women "appointed by the Governor with the advice and consent of . . . the Senate," 62 P.S. § 415, and they are instructed to administer public assistance "in accordance with law and the rules, regulations and standards established by the department [of Public Welfare]," 62 P.S. § 419(1). Finally, performance of public functions committed to the Boards by "a political subdivision of the Commonwealth" must be approved by the state. 62 P.S. § 419(3).[5]

On the basis of these state cases, and the guidance provided by *Mt. Healthy*, I conclude that the County Boards of Assistance in Pennsylvania are, for purposes of sovereign immunity, arms of the state and thus entitled to Eleventh Amendment immunity. Accordingly, I will direct that the Philadelphia County Board of Assistance be dismissed as a party defendant in this litigation. I would note, however, that the practical result of this dismissal may be slight inasmuch as the Executive Director of the Philadelphia County Board of Assistance has been separately joined as a party defendant.

### III.

The Commonwealth defendants have also complained that the dismissal by stipulation of the nursing home defendants, without notice to and acquiescence of the Commonwealth defendants, contravenes F.R.Civ.P. § 41(a)(1).

The record in this case does contain three documents, filed on December 1, 1978,

---

5. The recent abrogation of sovereign immunity by the Pennsylvania Supreme Court in *Mayle v. Pa. Dep't of Highways*, 479 Pa. 384, 388 A.2d 709 (Pa.1978), and its subsequent reinstatement by the legislature, do not render the cited Pennsylvania sovereign immunity cases less relevant to the cognate Eleventh Amendment question presented here.

which purport to be stipulations for dismissal of the nursing home defendants "with prejudice to the named plaintiff and without prejudice to the class plaintiffs." The documents are all signed by plaintiff's counsel and each is signed by the counsel for the nursing home defendants sought to be dismissed by the particular document. Thus, one stipulation is signed on plaintiff's behalf by Stephen F. Gold, Esq., for the plaintiffs, and by Howard R. Flaxman, Esq., for defendants Mayo Nursing Home and Beverly Shenfelt; another by Gold, and by Allan M. Debrow, Esq., for defendants Chapel Manor Nursing Home and Convalescent Center, Inc. and Thomas Mignone; and another by Gold, and by Gilbert Abramson, Esq., for Ashton Hall Nursing home and Stanley Segal. Apparently, pursuant to F.R.Civ.P. § 41(a)(1), the Clerk of this Court struck the names of these defendants from the caption of the case on the docket sheet. Rule 41(a)(1) provides:

> Subject to the provisions of Rule 23(e) . . . an action may be dismissed by the plaintiff without order of court . . . (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

But, contrary to Rule 41(a)(1), the stipulations were not signed by all parties who have appeared in the action. In particular, they were not signed by the Commonwealth defendants who now object to the apparent dismissal. Furthermore, Rule 41(a)(1) makes express reference to Rule 23(e) which provides that:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

And finally, Local Rule 23(b) provides that:

> Whenever in any civil action counsel shall notify the Clerk or the judge to whom the action is assigned that the issues between the parties have been settled, the Clerk shall, upon order of the judge to whom the case is assigned, enter an order dismissing the action with prejudice
> . . . . .

Suffice it to say that there was no order of this court approving these stipulations of dismissal, either under F.R.Civ.P. § 41(a)(1) or § 23(e) or Local Rule 23(b). The effect of this omission is that the parties defendant who signed these stipulations have never been dismissed from the case.

■ Were I convinced that dismissal of these parties pursuant to these stipulations is now appropriate, I would be prepared to approve them forthwith, and order the dismissals. But I am not so convinced. In the first place, the Commonwealth defendants are not signatories to the stipulation. Indeed, they oppose the dismissal of these defendants. Thus, in any event, the dismissal sought would be one under Rule 41(a)(2), "*By Order of Court,*" not one by stipulation. Second, and relating to the objections of Commonwealth defendants, there is still good reason for keeping the nursing home defendants in the case. There are presently before the court cross-motions for summary judgment filed by plaintiff and the Commonwealth defendants. One of the arguments upon which the Commonwealth relies for opposing summary judgment in favor of the plaintiff is that there is an essential dispute over a material issue of fact—namely, whether the Commonwealth defendants or the nursing homes are responsible for the alleged denial of skilled nursing facility care. *Commonwealth Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment,* filed June 11, 1979, at pp. 8–9. It is certainly inappropriate to dismiss parties defendant when a co-defendant has asserted that they, instead of it, may be the cause of the alleged wrong. Nor am I prepared to dismiss this defense by the Commonwealth defendants as frivolous when it is precisely the allegation that this same named plaintiff and a similar class have alleged in another suit filed in this courthouse. *Degregorio v. Segal,* 443 F.Supp. 1257 (E.D.Pa. 1978). Accordingly, I will decline to approve these stipulations and direct that the Clerk continue to serve the nursing home defendants with all pleadings in the case until further notice.

This leads to a further complication. Argument was heard on the cross-motions for summary judgment on October 25, 1979. But as the Commonwealth defendants pointed out in their *Brief in Opposition to Plaintiffs' Motion for Summary Judgment,* at p.1 n.1, the nursing home defendants were not a party to that proceeding, or even served with plaintiff's motion. For the reasons given above, I have concluded that this is an omission that must be corrected. Accordingly, I will direct that the nursing home defendants shall be served with all pleadings in this case subsequent to December 1, 1978. Furthermore, I will give them an opportunity to respond to the motions for summary judgment and, if they choose, to request reargument on those motions.

### IV.

One last piece of housekeeping remains to be taken care of: The Commonwealth defendants have argued in their *Brief in Opposition to Plaintiffs' Motion for Summary Judgment,* at pp. 11–13, that relief may not be granted to plaintiff in the absence of HEW as a party to this action. The argument is that HEW is a necessary party under F.R.Civ.P. § 19(a) since, in HEW's absence, (i) HEW's interest in this litigation cannot be sufficiently protected and (ii) the state may be subjected to conflicting obligations. HEW's apparent interest is that the relief sought would, if granted, very likely result in a substantial increase in state reimbursement levels which, if approved by HEW, would mandate a corresponding increase in matching payments to the state. But if HEW were not to approve higher reimbursement levels, the state might well be subjected to inconsistent obligations—on the one hand the obligation to the court to comply with a hypothetical remedial order, and on the other, its obligation to implement a program acceptable to HEW.

Although I find the Commonwealth's argument intriguing, I am not convinced that HEW must be joined under F.R.Civ.P. § 19(a). But I am persuaded that some form of HEW participation in this case would probably be very helpful to the resolution of the issues before me. I find the language of the Supreme Court in *Rosado v. Wyman,* 397 U.S. 397, 407–08, 90 S.Ct. 1207, 1215–16, 25 L.Ed.2d 442 (1970), *affirming National Welfare Rights Organization v. Wyman,* 304 F.Supp. 1346, 1349–50 (E.D.N.Y.1969), instructive in this regard:

> Whenever possible the district courts should obtain the views of HEW in those cases where it has not set forth its views either in a regulation or published opinion, or in cases where there is real doubt as to how the Department's standards apply to the particular state regulation or program.

397 U.S. at 406–07, 90 S.Ct. at 1215.

Accordingly, I will invite HEW to submit an *amicus* brief on the issues in this case that affect it. Such an invitation will at least put HEW on notice of the suit. If the Department wishes to move to intervene under Rule 24, I will consider its motion in due course.